Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Michael Ovca (*pro hac vice* to be sought)
movca@edelson.com
EDELSON PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the putative Class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMAN GHAZIZADEH, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>COURSERA, INC., a Delaware Corporation<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Iman Ghazizadeh brings this Class Action Complaint and Demand for Jury Trial against Coursera, Inc. ("Coursera") to put an end to its unlawful practice of disclosing its users' personally identifiable video-viewing information in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq*.

**NATURE OF THE ACTION**

1.      Coursera is an educational technology company that provides various educational courses via its interactive online platform. Coursera has partnered with top universities and

1   educational organizations to offer classes, certificates, and even degrees in various disciplines such

2   as computer science, business, and data science.

3       2.      Consumers like Plaintiff and the Class take online classes on the Coursera platform

4   by enrolling in courses made up of various pre-recorded lecture videos that they can complete at

5   their own pace. Consumers may enroll in free courses or otherwise purchase access to Coursera's

6   massive library of pre-recorded video lectures and other educational videos.

7       3.      Unbeknownst to consumers, when they view a video on the Coursera platform,

8   Coursera discloses a record of their viewing history to Meta Platforms, Inc. ("Meta")—the owner

9   and operator of the social media and advertising giant Facebook—together with personally

10  identifiable information concerning the consumer. Worst of all, consumers are never informed of,

11  nor do they give consent to, such a disclosure of their private viewing histories to third parties. Not

12  only do Defendant's actions demonstrate a brazen disregard for its subscribers' privacy rights, but

13  its actions violate the VPPA.

14      4.      The United States Congress passed the VPPA in 1988, seeking to give consumers the

15  power to "maintain control over personal information divulged and generated in exchange for

16  receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects

17  the central principle of the Privacy Act of 1974: that information collected for one purpose may not

18  be used for a different purpose without the individual's consent." *Id.*

19      5.      The VPPA allows consumers to recover damages from "[a] video tape service

20  provider who knowingly discloses, to any person, personally identifiable information concerning

21  any consumer of such provider." 18 U.S.C. § 2710(b)(1).

22                                          **PARTIES**

23      9.      Plaintiff Iman Ghazizadeh is a natural person and a citizen of the State of California.

24      10.     Defendant Coursera, Inc. is a corporation organized and existing under the laws of

25  the State of Delaware with its principal place of business located at 381 East Evelyn Avenue,

26  Mountain View, California 94041.

27

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*, which is a federal statute.

12.     This Court has personal jurisdiction over Defendant because it is registered to, and regularly conducts business in this District, including entering into transactions with consumers in this District. Further, this Court has personal jurisdiction over Defendant because the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District. 28 U.S.C. § 1391(b)(1)-(2).

**DIVISIONAL ASSIGNMENT**

14.     Pursuant to Civil Local Rule 3-2(e), this case should be assigned to the San Jose Division because substantial parts of the events or omissions giving rise to the claim occurred within the County of Santa Clara.

**COMMON FACTUAL ALLEGATIONS**

*The Video Privacy Protection Act*

15.     The desire to keep video-viewing history records private led Congress to enact the Video Privacy Protection Act in 1988. Frightened and concerned by the release of video-viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video-viewing histories.

16.     When legislators introduced the VPPA, the late Senator Paul Simon noted that:

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our

right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S. Rep. No. 100-599, at 6-7 (1988) (emphasis added).

17.     In another strikingly prescient statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599, at 7 (1988).

18.     Although in 1988 these Senators could not possibly foresee the amount of data collected from and about consumers today, both Senator Simon's and Senator Leahy's comments would prove prescient.

19.     Many glaring and dangerous privacy issues are implicated by Defendant's practice of disclosing its customers' video-viewing histories—the exact type of dangers that the VPPA was enacted to protect against. As described below, Defendant used a tracking technology to send one of the largest advertising companies in the world key information about the viewing habits of thousands of Coursera users, information that can all be tied to Plaintiff and the putative Class members on an individual basis and monetized as Meta sees fit.

20.     Accordingly, the VPPA affords consumers significant protections with respect to the collection and disclosure of information revealing the titles of any videos they have rented or purchased.

21.     Specifically, the VPPA prohibits any video tape service provider from knowingly disclosing personally identifiable information—*i.e.*, information that identifies consumers as having requested or obtained specific video materials from the video tape service provider—without informed consent. *See* 18 U.S.C. § 2710(a)-(b).

22.     Defendant is a "video tape service provider" under the VPPA, as it is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

*Coursera Intentionally Disclosed Plaintiff's and the Class's Private Viewing Information*

23.     Coursera touts its collaboration with "300+ leading universities and companies" such as the University of Illinois, the University of Michigan, IBM, and Google among others to deliver "more than 5,800 courses, Professional Certificates, and degrees" to its users. Consumers may enroll in courses to learn data science, math and logic, arts and humanities, personal development, and obtain degrees in data science, business, and public health among others.

24.     For example, Coursera offers a Masters of Applied Data Science degree from the University of Michigan. Consumers pay tuition and can access online pre-recorded course videos and other coursework. Coursera also offers non-degree courses such as "Excel to MySQL: Analytic Techniques for Business Specialization" taught by Duke University professors for $49 per month and various other paid certificate programs.

25.     Alternatively, consumers may purchase a "Coursera Plus" membership which gives them "unlimited access to over 90% of courses, Projects, Specializations, and Professional Certificates on Coursera…" rather than paying for individual courses piecemeal.

26.     By enrolling in a course, consumers can access learning "modules" or lessons that contain, *inter alia,* quizzes, reading material, and audiovisual materials or video lectures.

27.     Unbeknownst to consumers, however, Coursera surreptitiously shares their viewing choices and histories with Meta. Meta is not only the owner of social media website Facebook.com but is also a behemoth digital data mining and advertising company. Coursera transmits the video titles to Meta along with the consumer's Facebook ID.

28.     The Facebook ID is a string of unique numbers corresponding with a Facebook profile. Most importantly, a Facebook ID personally identifies the consumer because it is the identification number of a Facebook profile that anyone can use to easily locate, access, and view the corresponding profile. For example, one can access an individual's Facebook profile simply by typing it after the Facebook.com URL in a web browser's address bar.

29.     Facebook profiles contain a wealth of personal information about consumers, including their name, email, gender, date of birth, place of residence, educational history, and even

photographs of the individual.

30.     Consequently, Coursera's transmission of video titles alongside the consumer's Facebook ID is sufficient to identify the consumer as having watched, requested, or obtained a specific video on Coursera.

31.     Coursera's invasive practice of sharing consumers' private video-watching histories is made possible by embedding an invisible tracking tool in its website called a "Meta Pixel." The Meta Pixel ("Pixel") is a snippet of programming code that, once installed on a webpage, sends various information to Meta about the information displayed in the browser.

32.     Meta created the Pixel primarily as a tracking and advertising tool that allows website owners to track visitor traffic and actions on their websites by collecting visitor information and transmitting it back to Meta. Website owners integrate the Metal Pixel on their websites in hopes of better targeting their products and services on Facebook.

33.     According to Meta's website, the Pixel allows it "to match . . . website visitors to their respective Facebook User accounts."[1] Meta can then "tally their actions in the Facebook Ads Manager so [a website owner] can use the data to analyze [their] website's conversion flows and optimize [their] ad campaigns."[2]

34.     Meta's website explains that, to begin using the Pixel, a business must first "install" the Pixel "so it can be used on all pages" of their website.[3] Meta further states that "[d]evelopers and marketers can *optionally choose* to send additional information about" a visitor's activity (emphasis added).[4]

35.     Indeed, Defendant knew that by installing the Pixel on the Coursera website and affirmatively choosing to send information to Meta, the Pixel would send Meta information

---

[1] Meta for Developers, *Get Started*, https://developers.facebook.com/docs/meta-pixel/get-started (last accessed Nov. 1, 2023).
[2] *Id.*
[3] *Id.*
[4] Meta for Developers, *Meta Pixel*, https://developers.facebook.com/docs/meta-pixel (last accessed Nov. 1, 2023).

1   identifying its consumers and their viewing habits. Furthermore, Coursera configured the Pixel to

2   specifically transmit data to Meta when a consumer requests to watch or play a video on Coursera.

3        36.     Meta benefits from websites like Coursera installing its Pixel. When the Pixel is

4   installed on a business's website, the business has a greater incentive to advertise through Facebook

5   or other Meta-owned platforms like Instagram. In addition, even if the business does not advertise

6   exclusively with Facebook, the Pixel assists Meta in building more comprehensive data profiles of

7   its own users, which in turn allows Meta to profit from providing more targeted advertisements for

8   related businesses who do advertise through Facebook. Because the Pixel is so widespread, it

9   provides Meta with crucial information about its users' preferences through web-browsing activities

10  outside of Meta-owned platforms—data that Meta can monetize within its platforms.

11       37.     Coursera did not seek and obtain the appropriate consent as required under the VPPA

12  before sharing or disclosing consumers' video-viewing histories with anyone. At no point did

13  Coursera provide consumers, like Plaintiff and the putative Class, with a standalone consent form

14  (or any consent form whatsoever) to sign or agree to that disclosed Coursera's data-sharing

15  practices. Thus, Coursera failed to obtain the requisite consent from Plaintiff and the putative Class

16  to share their viewing information with Meta.

17  **FACTS SPECIFIC TO PLAINTIFF**

18       38.     Starting in or around 2017, Plaintiff Iman Ghazizadeh created a Coursera account

19  and enrolled in various paid courses. At one point, Plaintiff Ghazizadeh held a Coursera Plus

20  membership that gave him additional access to paid courses. Plaintiff Ghazizadeh has consistently

21  viewed videos on Coursera in order to complete various certificate programs.

22       39.     While a Coursera subscriber, Plaintiff Ghazizadeh held a Facebook account, which

23  was associated with a Facebook ID unique to his account. Plaintiff was logged into Facebook on the

24  same computer and browser that he watched Coursera videos.

25       40.     Unbeknownst to him, Coursera disclosed the video titles corresponding to the

26  content he watched on Coursera together with his Facebook ID to Meta—entirely without his

27  knowledge or consent.

## CLASS ACTION ALLEGATIONS

41.     **Class Definition:** Plaintiff brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of others similarly situated, defined as follows:

> All persons in the United States who (1) viewed a video on Coursera (2) on a computer browser (3) while they had a Facebook account.

42.     Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

43.     **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Plaintiff reasonably believes that tens of thousands of consumers who hold a Facebook account have watched videos on Coursera and fall into the Class definition. The number and identity of Class members can be easily ascertained from Defendant's records.

44.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not necessarily limited to the following:

   a.     whether Defendant is a video tape service provider;

   b.     whether Defendant disclosed personally identifiable information to a third party;

   c.     whether Defendant's disclosures of personally identifiable information were intentional; and

   d.     whether Defendant obtained written informed consent from Plaintiff and the Class.

45.     **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendant's misconduct at issue.

46.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect

1  the interests of the Class and has retained counsel competent and experienced in complex litigation

2  and class actions. Plaintiff's claims are representative of the claims of the other members of the

3  Class. That is, Plaintiff and the members of the Class sustained damages as a result of Defendant's

4  conduct. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses

5  unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on

6  behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor

7  his counsel have any interest adverse to the Class.

8      47.    **Superiority:** Class proceedings are superior to all other available methods for the

9  fair and efficient adjudication of this controversy, as joinder of all members of the Class is

10 impracticable. Individual litigation would not be preferable to a class action because individual

11 litigation would increase the delay and expense to all parties due to the complex legal and factual

12 controversies presented in this Complaint. By contrast, a class action presents far fewer

13 management difficulties and provides the benefits of single adjudication, economies of scale, and

14 comprehensive supervision by a single court. The class mechanism saves time, effort, and expense

15 and will ensure the uniformity of decisions.

16

17                          **FIRST CAUSE OF ACTION**
                  **Violation of the Video Privacy Protection Act**
                         **18 U.S.C. § 2710, *et seq.***
18                    **(On behalf of Plaintiff and the Class)**

19     51.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

20     52.    The VPPA prohibits a "video tape service provider" from knowingly disclosing

21 "personally identifying information" concerning any consumer to a third party without the

22 "informed, written consent (including through an electronic means using the Internet) of the

23 consumer." 18 U.S.C. § 2710 *et seq.*

24     53.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any

25 person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of

26 prerecorded video cassette tapes or similar audiovisual materials." Defendant is a "video tape

27 service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engages in the business of renting,

selling, and delivering audiovisual materials in the form of movies and television shows. Defendant's business affects interstate commerce because it sells, rents, and delivers audiovisual material to consumers throughout the United States.

54.     According to 18 U.S.C. § 2710(a)(1), a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiff and the putative Class are consumers as defined by the VPPA because they hold a Coursera account. Plaintiff and the putative Class rented, purchased, and/or subscribed to Coursera content and subsequently viewed various audiovisual materials on the platform.

55.     According to 18 U.S.C. § 2710(a)(3), "personally identifiable information" is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." As described above, Facebook IDs unequivocally correspond with a consumer's Facebook profile page and serve to personally identify them. Defendant disclosed to Meta the Coursera video titles corresponding with the videos requested by Plaintiff and the putative Class together with their Facebook IDs. Taken together, this information identified Plaintiff and the putative Class members as having requested or obtained those specific video materials from Coursera.

56.     Defendant intentionally placed a Meta Pixel on Coursera for the sole purpose of tracking consumers' activities including collecting and sharing their video-watching histories with Meta. At all relevant times, Defendant knew that the Pixel disclosed to Meta Plaintiff's and the Class's Facebook IDs along with the video titles corresponding to their requested videos.

57.     As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, either given at the time the disclosure is sought or given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner.

58.     Defendant never provided Plaintiff or the putative Class with a consent form complying with § 2710(b)(2)(B), and Plaintiff and the putative Class did not give the consent

required under the VPPA to allow their personally identifying information and video-viewing histories to be disclosed to Meta.

59.     Additionally, the VPPA creates an opt-out right for consumers under 18 U.S.C. § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the Act.

60.     By knowingly disclosing Plaintiff's and Class members' personal viewing content along with their Facebook IDs, Defendant violated Plaintiff's and Class members' statutorily protected right to privacy in their prerecorded video-watching habits. *See* 18 U.S.C. § 2710(c).

61.     As such, Defendant is liable to Plaintiff and the Class for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). Under the Act, Defendant is also liable for reasonable attorneys' fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Iman Ghazizadeh, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.  certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Iman Ghazizadeh as representative of the Class, and appointing his counsel as Class Counsel;

B.  declaring that Defendant's actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

C.  awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.  awarding damages, including statutory damages of $2,500 per violation, and

1     punitive damages, where applicable, in an amount to be determined at trial

2     pursuant to the VPPA, 18 U.S.C. § 2710(c);

3     E.  awarding Plaintiff and the Class their reasonable litigation expenses and

4     attorneys' fees;

5     F.  awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

6     allowable; and

7     G.  awarding such other and further relief as equity and justice may require.

8                   **JURY TRIAL**

9    Plaintiff demands a trial by jury of all triable issues.

10                Respectfully submitted,

11                **IMAN GHAZIZADEH**, individually and on

12                behalf of all others similarly situated,

13 Dated: November 1, 2023      By: /s/ Rafey Balabanian
One of Plaintiff's Attorneys

14

15                Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com

16                EDELSON PC
150 California Street, 18th Floor

17                San Francisco, California 94111
Tel: 415.212.9300

18                Fax: 415.373.9435

19                Michael Ovca (*pro hac vice* to be sought)
movca@edelson.com

20                EDELSON PC
350 North LaSalle, 14th Floor

21                Chicago, Illinois 60654
Tel: 312.589.6370

22                Fax: 312.589.6378

23                *Counsel for Plaintiff and the Putative Class*

24

25

26

27