Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Michael Ovca (*pro hac vice*)
movca@edelson.com
Hannah Hilligoss (*pro hac vice*)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IMAN GHAZIZADEH, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>  *v.*<br><br>COURSERA, INC., a Delaware corporation,<br><br>    *Defendant.* | Case No. 5:23-cv-05646-EJD<br><br>Hon. Edward J. Davila<br><br>**PLAINTIFF'S OPPOSITION TO COURSERA'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: June 6, 2024<br>Time: 9:00 a.m.<br>Dept.: 4<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................. vi

I.      INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................ 2

III.   ARGUMENT ...................................................................................................... 4

      A.     Coursera Waived any Right to Arbitrate. ................................................. 4

            1.     Coursera Had Knowledge of Its Arbitration Clause. ............................. 5

            2.     Coursera Acted Inconsistently with Its Purported Arbitration Right. ... 5

      B.     Plaintiff Did Not Agree to Delegate the Threshold Question of Contract Formation ............................................................................................ 8

      C.     Coursera Has Failed to Establish Plaintiff's Manifestation of Assent to the Arbitration Clause ......................................................................... 9

            1.     Plaintiff Did Not Manifest Assent When He Signed Up for Coursera in 2015 or Through Continued Use After TOU Update Notifications ....... 11

                i.     *2015 Coursera Sign-up* ............................................................ 11

                ii.    *Email and Banner Notices* .......................................................... 15

            2.     Plaintiff Did Not Manifest Assent When He Enrolled in a Paid Certification Course in 2022 .......................................................... 19

      D.     To the Extent the Court is Inclined to Find Contract Formation Occurred, the Court Should First Permit Limited Discovery Into the Issue ............................. 21

IV.   CONCLUSION ................................................................................................ 22

**TABLE OF AUTHORITIES**

**Supreme Court Cases**

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ........................................................................................... 9

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ........................................................................................ 4, 6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ........................................................................................... 9

*Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ........................................................................................... 9

**United States Circuit of Appeals Cases**

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
    21 F.4th 631 (9th Cir. 2021) ........................................................................... 1, 9

*Armstrong v. Michaels Stores, Inc.*,
    59 F.4th 1011 (9th Cir. 2023) ..................................................................... 4, 5, 6

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ..................................................................... *passim*

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
    50 F.3d 388 (7th Cir. 1995) ............................................................................... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................................... 9

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*,
    495 F.3d 1062 (9th Cir. 2007) ......................................................................... 15

*Hansen v. LMB Mortg. Servs., Inc.*,
    1 F.4th 667 (9th Cir. 2021) ............................................................................. 10

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) ............................................................................. 4

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ........................................................................... 10

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ..................................................................... 15, 17

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*,
    552 F. App'x 663 (9th Cir. 2014) ...................................................................... 7

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ....................................................................... 9, 10

PL'S OPP. TO COURSERA'S
MOTION TO COMPEL ARBITRATION
    ii
    Case No. 5:23-cv-05646-EJD

*Lee v. Intelius Inc.*,
    737 F.3d 1254 (9th Cir.2013) ........................................................................................ 14

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ................................................................................. 21

*Lopez v. Dave Inc.*,
    No. 22-16915, 2023 WL 8594393 (9th Cir. Dec. 12, 2023) ........................................ 20

*Munro v. Univ. of S. Cal.*,
    896 F.3d 1088 (9th Cir. 2018) ........................................................................................ 9

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
    931 F.3d 935 (9th Cir. 2019) .......................................................................................... 5

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .......................................................................... 2, 9, 10, 16

*Norcia v. Samsung Telecommunications Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) .................................................................................... 1, 10

*Petroleum Pipe Americas Corp. v. Jindal Saw*, Ltd.,
    575 F.3d 476 (5th Cir. 2009) .......................................................................................... 6

*Reichert v. Rapid Invs., Inc.*,
    56 F.4th 1220 (9th Cir. 2022) ...................................................................................... 10

*Stover v. Experian Holdings, Inc.*,
    978 F.3d 1082 (9th Cir. 2020) ...................................................................................... 15

*Van Ness Townhouses v. Mar Indus. Corp.*,
    862 F.2d 754 (9th Cir. 1988) .......................................................................................... 6

**United States District Court Cases**

*Attia v. Oura Ring, Inc.*,
    No. 23-cv-03433-HSG, 2024 WL 1382464 (N.D. Cal. Apr. 1, 2024) ........................ 10

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ........................................................................ 18

*ConWest Res., Inc. v. Playtime Novelties, Inc.*,
    No. C 06-5304SBA, 2007 WL 1288349 (N.D. Cal. May 1, 2007) ............................... 7

*FBC Mortg., LLC v. Skarg*,
    No. 23-CV-00143-CRB, 2023 WL 6933359 (N.D. Cal. Oct. 19, 2023) .................... 7, 8

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................................... 3

*In re Google Assistant Priv. Litig.*,
    No. 19-CV-04286-BLF, 2024 WL 251407 (N.D. Cal. Jan. 23, 2024) .......................... 5

*In re Hulu Priv. Litig.*,
    No. C 11-03764-LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ............................ 3

*Jackson v. Amazon.com, Inc.*,
   559 F. Supp. 3d 1132 (S.D. Cal. 2021)................................................................. 16

*Jackson v. Fandom, Inc.*,
   No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ..................... 3

*Kaplan v. Athletic Media Co.*,
   No. 23-CV-00229-JST, 2023 WL 8587981 (N.D. Cal. Dec. 8, 2023) ..................... 19

*Kater v. Churchill Downs Inc.*,
   No. 3:15-CV-00612-RBL, 2018 WL 5734656 (W.D. Wash. Nov. 2, 2018)................ 6

*Leo Middle E. FZE v. Zhang*,
   No. 21-CV-03985-CRB, 2022 WL 207663 (N.D. Cal. Jan. 24, 2022)...................... 6

*Maree v. Deutsche Lufthansa AG*,
   No. 20-885, 2021 WL 267853 (C.D. Cal. Jan. 26, 2021) ..................................... 14

*Massel v. SuccessfulMatch.com*,
   No. 23-CV-02389-PCP, 2024 WL 802194 (N.D. Cal. Feb. 27, 2024) ..................... 13

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) .............................................................. 21

*Pumphrey v. Triad Life Scis. Inc.*,
   No. 3:23CV299-MPM-RP, 2024 WL 69914 (N.D. Miss. Jan. 5, 2024) .................... 6

*Quamina v. JustAnswer LLC*,
   No. 22-CV-06051-JD, 2024 WL 950157 (N.D. Cal. Mar. 5, 2024)................ 15, 16, 19

*Revitch v. Uber Techs., Inc.*,
   No. 18-CV-2974-PSG-GJS, 2018 WL 6340755 (C.D. Cal. Sept. 5, 2018)................ 17

*Rocha v. Urb. Outfitters, Inc.*,
   No. 23-CV-00542-AMO, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024)................ 13, 14

*SanDisk Corp. v. SK Hynix Inc.*,
   84 F. Supp. 3d 1021 (N.D. Cal. 2015) ................................................................ 7

*Sellers v. Bleacher Rep., Inc.*,
   No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023)........................ 3

*Sequoia Benefits & Ins. Servs., LLC v. Constantini*,
   553 F. Supp. 3d 752 (N.D. Cal. 2021) ................................................................ 6

*Serrano v. Open Rd. Delivery Holdings*, Inc.,
   666 F. Supp. 3d 1089 (C.D. Cal. 2023) ............................................................. 13

*Sifuentes v. Dropbox, Inc.*,
   No. 20-CV-07908-HSG, 2022 WL 2673080 (N.D. Cal. June 29, 2022)................... 17

*Slaten v. Experian Info. Sols., Inc.*,
   No. CV 21-09045-MWF (EX), 2023 WL 6890757 (C.D. Cal. Sept. 6, 2023)............. 7

*Sparkman v. Comerica Bank*,
  No. 23-CV-02028-DMR, 2023 WL 5020269 (N.D. Cal. Aug. 4, 2023) .......................... 9, 10

*Stickles v. Atria Senior Living, Inc.*,
  No. C 20-09220 WHA, 2023 WL 2062949 (N.D. Cal. Feb. 16, 2023) ................................. 7

*Whalen v. Facebook, Inc.*,
  No. 20-CV-06361-JST, 2022 WL 19934419 (N.D. Cal. Apr. 11, 2022) ............................ 17

*Williams v. DDR Media, LLC*,
  No. 22-CV-03789-SI, 2023 WL 2314868 (N.D. Cal. Feb. 28, 2023) ................................. 14

**State Court Cases**

*B.D. v. Blizzard Ent., Inc.*,
  76 Cal. App. 5th 931 (2022) ...................................................................................11

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ........................................................................ 2, 10, 14

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
  25 Cal. App. 3d 987 (1972) ................................................................................... 10

**Miscellaneous Authority**

Fed R. Civ P. 12 ................................................................................................ 1, 3, 5

Fed R. Civ P. 26 ...................................................................................................... 8

Matt Plummer, *How to Spend Way Less Time on Email Every Day*, Harvard Business Review
  (Jan. 22, 2019), https://hbr.org/2019/01/how-to-spend-way-less-time-on-email-every-day . 16

Sam Cahoon, *Email Open Rates By Industry (& Other Top Email Benchmarks)*, HubSpot
  (June 29, 2023), https://blog.hubspot.com/sales/average-email-open-rate-benchmark......... 16

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

1.  Whether Coursera waived its purported right to arbitrate.

3

2.  Whether an agreement to arbitrate exists.

4

3.  Whether discovery into the issue of contract formation is warranted.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Over the past six months, Coursera has repeatedly indicated its intent to litigate this case on the merits *in this Court*. Most significantly, it filed a Rule 12(b)(6) motion to dismiss Plaintiff's claims on the merits, which was scheduled for hearing a mere four court-days before Coursera filed its motion to compel arbitration. For months before and after filing its merits motion, Coursera conferred with Plaintiff's counsel regarding its intention to file the motion to dismiss, the briefing schedule for that motion, and the motion's implications for the timing of the case management conference, initial disclosures, and discovery. Coursera filed three stipulations as a result of those discussions—all indicating Coursera's commitment to getting a decision on the merits in this Court. At no point in any of these filings or communications with Plaintiff's counsel did Coursera even mention arbitration. It wasn't until Coursera's motion to dismiss had been fully briefed for two months—giving Coursera the opportunity to assess the weakness of its merits argument in light of Plaintiff's opposition—that Coursera filed its motion to compel arbitration. (Dkt. 38.) And indeed, to this day, Coursera is seeking a merits determination on that motion. A defendant may not wait and see how litigation goes before deciding whether it is better off in court or in arbitration. By doing exactly that, Coursera waived its right to enforce the purported arbitration agreement.

Even if Coursera had not waived arbitration, it has failed to establish that Plaintiff ever agreed to arbitration in the first place. Coursera dedicates an anemic three paragraphs of argument to the issue of contract formation, each of which are lacking in any substantive argument and are virtually devoid of supporting authority. Instead, the majority of the brief is dedicated to the erroneous argument that the Parties delegated the threshold issues of arbitrability—including formation—to the arbitrator. (Dkt. 38 at 11–15.) It is black-letter law that contract formation cannot be delegated and is an issue for the Court to decide. *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021). And on that key question, Coursera also misplaces the burden— Coursera, not Plaintiff, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

Coursera's threadbare theories of formation fall woefully short of meeting that burden.

Coursera claims that Plaintiff agreed to Coursera's Terms of Use ("TOU") (1) when he signed up for Coursera in 2015 (however, the 2015 TOU are conspicuously absent from Coursera's submission), after which Coursera sent email notices and posted banners on its homepage purporting to notify users of an updated TOU with an arbitration clause; and (2) when Plaintiff purchased a certification course in 2022. (Dkt. 38 at 2.) In considering the adequacy of online contracts, California courts and the Ninth Circuit have repeatedly emphasized that because online providers "have complete control over the design of their websites," *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 475 (2021), they bear the responsibility to put users on notice of the terms they intend to enforce. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers."). Coursera had complete control over the design of its sign-up screen, its payment processing screen, its email notices, and its website banners. Yet, at every stage, Coursera chose to present its Terms of Use in a manner that was not reasonably conspicuous, that did not require the user to unambiguously manifest assent, or both. Consequently, no contract was formed at any of these stages.

Coursera's motion to compel arbitration should be denied. In the alternative, Plaintiff respectfully requests leave to conduct limited discovery regarding the question of contract formation: specifically, to investigate the screen flows and TOUs that were allegedly presented to Plaintiff when he interacted with the website, which bear on the question of contract formation.

## II.    BACKGROUND

Plaintiff filed this case on November 1, 2023, alleging that Coursera—a platform that offers online educational courses via pre-recorded videos—violated the VPPA by knowingly sharing his personally identifying information along with his video-viewing history with Meta without obtaining his consent. (Dkt. 1.) As early as November 20, 2023, Coursera indicated that it intended to file a motion to dismiss when the Parties conferred via email regarding a briefing schedule, (Declaration of Hannah Hilligoss ("Hilligoss Decl.") ¶ 2, Ex. 1 at 1–2), and Coursera thereafter filed a stipulation with the Court setting the motion to dismiss briefing deadlines. (Dkt. 15.) Coursera

followed through, filing a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) on January 12, 2024, and noticing a hearing for March 21, 2024. (Dkt. 20.) Plaintiff opposed, (dkt. 27), explaining how each of Coursera's arguments in support of dismissal had been explicitly rejected by multiple courts in this District—and across the country—over the past decade. *See, e.g.*, *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *2–6 (N.D. Cal. July 28, 2023); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *2–4 (N.D. Cal. July 20, 2023); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019); *In re Hulu Priv. Litig.*, No. C 11-03764-LB, 2012 WL 3282960, at *4–8 (N.D. Cal. Aug. 10, 2012). Coursera filed its reply on March 1, 2024, meaning this motion had been fully briefed for almost two months and was initially set for argument more than a month before Coursera filed its motion to compel arbitration.

Coursera repeatedly reiterated its commitment to resolving the case on the merits in this Court while the motion to dismiss was being briefed. On January 9, 2024, Coursera reached out to Plaintiff to discuss ADR selection and explicitly stated that it was open to discussing resolution of the case before the motion to dismiss hearing. (Hilligoss Decl. ¶ 3, Ex. 2 at 1.) Coursera also asked Plaintiff to agree to push the case management conference until the Court issued a decision on its pending motion to dismiss. (*Id.*) Plaintiff agreed under the impression that Coursera was seeking the stipulation in good faith (rather than to bolster a delayed motion to arbitrate with the manufactured lack of a case management conference and initial disclosures). Coursera then filed a stipulation asking the Court to postpone these deadlines "in the interest of judicial and party economy and efficiency[.]" (Dkt. 22 at 1.)

On March 6, 2024, Coursera again reached out to Plaintiff's counsel, this time asking to continue the motion to dismiss hearing date because of its counsel's family medical issue and scheduling conflicts. (Hilligoss Decl. ¶ 3, Ex. 2 at 4.) Plaintiff's counsel of course agreed. Consequently, Coursera filed a third stipulation to that effect, ultimately pushing the hearing from March 21, 2024 to May 2, 2024. (Dkt. 33.)

At some point along the way, Coursera decided it no longer wanted to litigate in the forum that it had taken advantage of for the past six months. Thus, on the eve of the merits decision that it

1   sought on the first place, Coursera moved, over Plaintiff's objection, to continue the motion to

2   dismiss hearing so that Coursera could first file a motion to compel arbitration. (Dkt. 36.) The Court

3   granted the continuance and set both the motion to dismiss and the motion to compel arbitration for

4   hearing on June 6, 2024. (Dkt. 37.)

5   **III.   ARGUMENT**

6         Coursera's motion to compel arbitration should be denied for three reasons. First, Coursera

7   waived any right it may have had to rely on the arbitration clause in its Terms of Use by acting

8   inconsistently with that right—most notably by seeking judicial resolution of the merits through a

9   motion to dismiss. Second, even if Coursera had not waived its right to arbitration, this Court—not

10  an arbitrator—must decide whether an agreement to arbitrate exists. Third, Coursera has failed to

11  establish that Plaintiff manifested his assent to be bound by the arbitration clause in its TOU.

12        **A.      Coursera Waived any Right to Arbitrate.**

13        "The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829

14  F.3d 1118, 1124 (9th Cir. 2016). The test for waiver of the right to compel arbitration consists of

15  two elements: "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts

16  inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir.

17  2023). The Ninth Circuit previously required a third element: prejudice to the person opposing

18  arbitration. *Id.* However, the Supreme Court in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)

19  eliminated the prejudice requirement as an inappropriate "'special' rule favoring arbitration."

20  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023). The Supreme Court

21  clarified that "there is no strong federal policy favoring enforcement of arbitration agreements." *Id.*

22  (discussing *Morgan*). Rather, "the pro-arbitration 'federal policy is about treating arbitration

23  contracts like all others, not about fostering arbitration.'" *Id.* at 1014 (quoting *Morgan*, 596 U.S. at

24  418). After *Morgan*, Ninth Circuit precedent applying the first two elements (knowledge and

25  inconsistent acts) remains good law but is abrogated to the extent it requires a showing of prejudice

26  or a heightened burden to establish waiver. *Hill*, 59 F.4th at 460; *Armstrong*, 59 F.4th at 1015.

27  Furthermore, waiver is an issue for the Court, not the arbitrator, to decide. *Martin*, 829 F.3d at 1123.

28        Here, Coursera waived its right to arbitrate because it has been aware of the arbitration

clause in its Terms of Use since the outset of this lawsuit, and it acted inconsistently with an intent to arbitrate by litigating the merits of Plaintiff's claims in this Court for the past six months.

### 1. Coursera Had Knowledge of Its Arbitration Clause.

Coursera's motion to compel arbitration is devoid of any explanation for its six-month delay. Coursera knew of the right to arbitration contained in its TOU because it was the drafter of the TOU. *In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) ("Knowledge of a contractual right to arbitrate is imputed to the contract's drafter.") (quotations omitted). Coursera claims that some form of an arbitration clause was present in its TOU in 2015, when Plaintiff created a Coursera account. (Dkt. 38 at 2.) While Coursera doesn't actually attach the 2015 TOU, and Plaintiff obviously disagrees with its applicability, this alone is sufficient to establish Coursera's knowledge of its purported arbitration rights. The allegations in the Complaint underscore that Coursera reasonably knew of the potential for arbitration arguments from this case's outset. Plaintiff alleges that he enrolled in various paid Coursera courses in or around 2017. (Dkt. 1 ¶ 38.) Coursera asserts that it has updated the arbitration provisions in its TOU multiple times since 2017, as recently as 2023. (Dkt. 38 at 2, 5–7.) Thus, the first element of waiver—Coursera's knowledge of its purported right to arbitrate—is met.

### 2. Coursera Acted Inconsistently with Its Purported Arbitration Right.

In assessing whether a defendant took actions inconsistent with its purported right to arbitration, courts "consider the totality of the parties' actions," asking "whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate.'" *Armstrong*, 59 F.4th at 1015 (quoting *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 473 n.19 (9th Cir. 2019)). Coursera acted inconsistently with its purported arbitration right by (1) seeking a decision on the merits of Plaintiff's claims by filing a Rule 12(b)(6) motion to dismiss; (2) repeatedly communicating its intent to litigate this case on the merits in this forum to both Plaintiff and the Court; and (3) continuing to seek a decision on the merits in this Court notwithstanding the now-pending motion to compel arbitration.

First, Defendant waived arbitration by filing a Rule 12(b)(6) motion to dismiss seeking a

1   decision on the merits of Plaintiff's claim. "[A]lthough filing a motion to dismiss that does not

2   address the merits of the case is not sufficient to constitute an inconsistent act, seeking a decision *on*

3   *the merits of an issue* may satisfy this element." *Martin*, 829 F.3d at 1125 (emphasis added); *see*

4   *also Armstrong*, 59 F.4th at 1015 ("Obviously, seeking a decision on the merits of a key issue in a

5   case indicates an intentional and strategic decision to take advantage of the judicial forum.")

6   (quotations and alterations omitted); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759

7   (9th Cir. 1988) (finding that a "conscious decision to continue to seek judicial judgment on the

8   merits of [an] arbitrable clai[m]" is inconsistent with a right to arbitrate; *Leo Middle E. FZE v.*

9   *Zhang*, No. 21-CV-03985-CRB, 2022 WL 207663, at *4 (N.D. Cal. Jan. 24, 2022) ("Litigating

10  motions to dismiss instead of requesting that the matter go to an arbitrator is inconsistent with a

11  desire to arbitrate."); *Sequoia Benefits & Ins. Servs., LLC v. Constantini*, 553 F. Supp. 3d 752, 759

12  (N.D. Cal. 2021) (motion to dismiss going to the merits of plaintiff's claims "demonstrate[d] that

13  defendants acted inconsistently with their arbitration right"). While *Martin* used the permissive

14  "may", it also approvingly cited the principle that "[a] party waives arbitration by seeking a

15  decision on the merits before attempting to arbitrate." 829 F.3d at 1125–26 (quoting *Petroleum Pipe*

16  *Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)); *see also Kater v. Churchill*

17  *Downs Inc*., No. 3:15-CV-00612-RBL, 2018 WL 5734656, at *4 (W.D. Wash. Nov. 2, 2018)

18  (explicitly rejecting argument that "a motion to dismiss alone is not enough to waive arbitration,"

19  and finding waiver even though the parties had not engaged in discovery and the defendant

20  purported to reserve its right to arbitrate in its motion to dismiss).

21      The fact that the motion to dismiss hasn't yet been resolved does not change this outcome.

22  The *Martin* court made clear that "[m]ore important" than the judge's ruling on the motion to

23  dismiss is the fact that "the defendants *sought* a ruling on the merits." 829 F.3d at 1126 n.4

24  (emphasis in original); *see also Pumphrey v. Triad Life Scis. Inc.*, No. 3:23CV299-MPM-RP, 2024

25  WL 69914, at *1 (N.D. Miss. Jan. 5, 2024) (finding waiver where motion to dismiss was still

26  pending and noting that "any attempt to go to the merits and to retain still the right to arbitration is

27  clearly impermissible") (quotation omitted). This is especially true now that prejudice is no longer a

28  requirement for waiver. *See Morgan*, 596 U.S. at 419 (holding that prejudice is not a condition of

waiver). "To decide whether a waiver has occurred, the court focuses *on the actions of the person who held the right*," *id.* at 417 (emphasis added), not on how those actions impact a third party and not on how the court ultimately responds to those actions. Here, then, the only relevant conduct is Coursera's filing a motion to dismiss, not whether the Court has yet resolved that motion.

It is true that courts "look unfavorably upon a party who litigates an issue in another forum to 'see how the case was going . . . before deciding whether it would be better off there or in arbitration.'" *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1034 (N.D. Cal. 2015) (quoting *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)); *Stickles v. Atria Senior Living, Inc.*, No. C 20-09220 WHA, 2023 WL 2062949, at *2 (N.D. Cal. Feb. 16, 2023) ("Defendants may not wait to see how the judicial winds blow before reversing course towards arbitration."). But Coursera, here, didn't need a merits *decision* to "see how the case was going." Plaintiff's brief in opposition to Coursera's motion to dismiss put forth a plethora of directly on-point authority—in this District and in courts across the country—that squarely rebuts Coursera's merits arguments. (*See generally* dkt. 27.) Now, on the eve of the merits decision that it sought in the first place, Coursera "is seeking an alternative forum sensing an adverse ruling in this one." *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304SBA, 2007 WL 1288349, at *5 (N.D. Cal. May 1, 2007); *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (affirming denial of motion to compel arbitration "where the untimely exercise of an arbitration clause would allow a party to evade future rulings of a federal judge which it fears will be unfavorable.").

Second, Coursera delayed moving to compel arbitration for six months, all the while repeatedly communicating its intent to litigate this case on the merits in this forum to both Plaintiff and the Court. *See Slaten v. Experian Info. Sols., Inc.*, No. CV 21-09045-MWF (EX), 2023 WL 6890757, at *4 (C.D. Cal. Sept. 6, 2023) (finding waiver where defendant waited five months after discovering right to arbitrate); *FBC Mortg., LLC v. Skarg*, No. 23-CV-00143-CRB, 2023 WL 6933359, at *3 (N.D. Cal. Oct. 19, 2023) (finding eight month delay sufficient for waiver where defendant also filed motion to dismiss). Coursera first conveyed its intent to litigate when it initially reached out to Plaintiff in November 2023 to set a motion to dismiss briefing schedule. (Hilligoss

Decl. ¶ 2, Ex. 1 at 1–2.) Coursera notes that there has not been an initial case management conference in this case, no Rule 26(f) conference has occurred, and no discovery has been issued to date. (Dkt. 38 at 9.) But this is true only because Coursera proposed postponing these actions until after the Court issued a decision on its pending motion to dismiss. (Hilligoss Decl. ¶ 3, Ex. 2 at 1.) In any event, discovery is not necessary for waiver where the defendant otherwise takes advantage of the federal forum. *See FBC Mortg., LLC*, 2023 WL 6933359, at *3 (finding waiver where no discovery had been taken, but defendant had filed motion to dismiss). And in that same email, Coursera explicitly indicated that it "remain[ed] open to discussing a potential resolution before the MTD hearing." (Hilligoss Decl. ¶ 3, Ex. 2 at 1.) On March 6, 2024, Coursera again reached out to Plaintiff, this time asking to continue the motion to dismiss hearing date because of its counsel's family medical issue and scheduling conflicts. (*Id.* ¶ 3, Ex. 2 at 4.)[1] Shortly thereafter, Coursera filed a stipulation to that effect. (Dkt. 33.) Each of these communications with Plaintiff's counsel and the three stipulations filed with the Court—none of which included any mention of arbitration—indicated an intent to litigate the merits and resolve the case *in this Court*, which is inconsistent with an intention to arbitrate.

Finally, and tellingly, Coursera is *still* seeking a judicial decision on the merits as it has not withdrawn its pending motion to dismiss. Coursera hasn't even asked the Court to decide the arbitration motion *before* the motion to dismiss. Under Coursera's heads-I-win, tails-you-lose proposal, it can ask the Court to compel arbitration, while keeping its motion to dismiss as a backup. But Coursera cannot have it both ways—by continuing to seek a ruling on the merits, it has waived any purported right to arbitrate.

Because Coursera waived any purported right to arbitrate, its motion to compel arbitration should be denied.

### B. Plaintiff Did Not Agree to Delegate the Threshold Question of Contract Formation.

Even if Coursera did not waive arbitration, its motion to compel fails because it has not met

---

[1] Plaintiff's counsel is not suggesting that it was inappropriate to seek an extension on this basis. The point is that Coursersa never deviated course in keeping the motion to dismiss hearing on the calendar.

its burden to prove that an agreement to arbitrate exists—and this is a question for the Court, not the arbitrator. Arbitration is a matter of "consent, not coercion." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) and *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Consequently, a court cannot compel arbitration in the absence of an agreement to arbitrate. *Id.* Before compelling arbitration, this Court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Coursera spends five of its seven pages of argument trying to convince the Court that Plaintiff agreed to delegate the first two questions of arbitrability. (Dkt. 38 at 11–15.) At least with respect to the first question, this is incorrect. The first threshold question—whether a valid agreement to arbitrate exists—has two parts: first, whether an agreement to arbitrate exists at all; and second, whether that agreement is valid. Coursera conflates these two issues, arguing that the arbitrator must decide whether a valid agreement exists. (*Id.*) While challenges to the *validity* of an arbitration agreement can be delegated to an arbitrator, challenges to the very *existence* of an agreement cannot—this is black-letter law that has stood for decades. *Ahlstrom*, 21 F.4th at 635 (holding that "parties cannot delegate issues of formation to the arbitrator.") (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010)). Here, as explained below, Plaintiff challenges the existence of the purported agreement, a question reserved for this Court.

### C. Coursera Has Failed to Establish Plaintiff's Manifestation of Assent to the Arbitration Clause.

In order for Coursera's arbitration clause to be enforceable, Plaintiff must have agreed to the contract containing it. *Nguyen*, 763 F.3d at 1175. Courts turn to traditional state-law contract principles to ascertain whether a contract has been formed. *Id.* "[U]nder California law, mutual assent is a required element of contract formation." [2] *Knutson v. Sirius XM Radio Inc.*, 771 F.3d

---

[2]    Where, as here, "[subject matter] jurisdiction is not based on diversity of citizenship . . . federal common law choice-of-law rules apply." *Sparkman v. Comerica Bank*, No. 23-CV-02028-

559, 565 (9th Cir. 2014). "This principle of knowing consent applies with particular force to

provisions for arbitration." *Id.* at 566 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25

Cal. App. 3d 987, 993 (1972)). In the Ninth Circuit, absent actual knowledge, an enforceable online

contract will be found through inquiry notice only if: "(1) the website provides reasonably

conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes

some action, such as clicking a button or checking a box, that unambiguously manifests his or her

assent to those terms," (the "*Berman* test").[3] *Berman*, 30 F.4th at 856.

Coursera bears the burden of establishing the existence of an agreement to arbitrate. *Attia v.

Oura Ring, Inc.*, No. 23-cv-03433-HSG, 2024 WL 1382464, at *2 (N.D. Cal. Apr. 1, 2024) (citing

*Norcia*, 845 F.3d at 1283). Coursera claims that the burden is on the party opposing arbitration,

(dkt. 38 at 10), but this does not apply to the issue of contract formation. *Norcia*, 845 F.3d at 1283;

*Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022). Whether Coursera has satisfied its

burden is resolved on a summary judgment standard, because granting its motion to stay litigation

in deference to an arbitration agreement would be "in effect a summary disposition of the issue of

whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate." *Hansen v.

LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

Generally, contracts formed online fall within two categories: (1) "'clickwrap' agreements,

in which a website presents users with specified contractual terms on a pop-up screen and users

must check a box explicitly stating 'I agree' in order to proceed[,]" and (2) "'browsewrap'

agreements, in which a website offers terms that are disclosed only through a hyperlink and the user

supposedly manifests assent to those terms simply by continuing to use the website." *Berman*, 30

F.4th at 856. Some courts recognize an intermediary category of "sign-in-wrap" agreements, "in

which a user signs up to use an internet product or service, and the sign-up screen states that

acceptance of a separate agreement is required before the user can access the service." *Sellers*, 73

---

DMR, 2023 WL 5020269, at *3 (N.D. Cal. Aug. 4, 2023) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). While the California choice of law provision in Coursera's TOU does not govern here, (*see* dkt. 38-3 at 6); *Nguyen*, 763 F.3d at 1175, Plaintiff agrees that California law should apply.

[3]      Coursera does not argue that Plaintiff had actual knowledge of its TOU, (*see generally* dkt. 38), accordingly, the analysis below applies the inquiry notice *Berman* test.

Cal. App. 5th at 464. Here, the at-issue webpages are all either pure browsewrap or fall somewhere between browsewrap and sign-in-wrap. Though categorizing internet offers as one of the different "wraps" may provide some conceptual assistance when determining whether consumers have agreed to online terms, ultimately the same inquiry notice test applies because "it is the degree of notice provided, not the label, that is determinative." *See B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 950 (2022).

Coursera spends a total of three paragraphs of its argument on formation, offers only two inapposite cases in support thereof, and doesn't even engage with the established *Berman* test. (Dkt. 38 at 14–16.) This is likely because Coursera mistakenly believed formation could be delegated to the arbitrator. (*Id.*) Regardless of the reason, Coursera's paltry showing does not come close to satisfying its burden of establishing contract formation, and the motion should be denied for that reason. Despite the lack of substantive argument Plaintiff will respond to Coursera's two theories of formation: (1) that Plaintiff agreed to the 2015 TOU when he registered for Coursera and was, therefore, bound to the arbitration agreement in revised versions of the TOU through continued use and notification of TOU updates; and (2) that Plaintiff agreed to the 2022 TOU when he purchased a Coursera certification course in 2022. (Dkt. 38 at 14.) Both theories fail because Plaintiff was never presented with reasonably conspicuous notice of the TOU where the notice required unambiguous manifestation of assent to the terms.

### 1. Plaintiff Did Not Manifest Assent When He Signed Up for Coursera in 2015 or Through Continued Use After TOU Update Notifications.

#### i. *2015 Coursera Sign-up*

Coursera claims that Plaintiff signed up for Coursera in 2015 through the sign-up screen presented below in ***Figure 1***. (Dkt. 38 at 4.) As an initial matter, in the introduction to its brief, Coursera claimed that the Terms of Use in place in 2015 ("2015 TOU") contained an arbitration clause, (*id.* at 2), but Coursera later seemed to abandon that position, claiming only that the 2015 TOU contained a clause stating that "continued use of the Services after publication of [TOU] changes, with or without notification, constitutes binding acceptance of the revised Terms" (the "continuing use" clause). (*Id.* at 5.) There is a significant hole in Coursera's presentation: Coursera

1  does not attach the 2015 TOU as an exhibit and does not claim that it contained an arbitration clause

2  in the Declaration of Mustafa Furniturewala. (Dkt. 38-1 ¶¶ 8–9.) As such, Coursera has failed to

3  establish that the 2015 TOU contained an arbitration clause at all.

4         In any event, Coursera's first theory of formation seems to be that Plaintiff is bound by the

5  arbitration clause in revised TOUs because the 2015 TOU in place when Plaintiff created an

6  account contained the continuing use clause. (Dkt. 38 at 4–5.) Again, Coursera cannot satisfy its

7  burden of proving that Plaintiff was bound to the 2015 TOU when it hasn't even produced a copy of

8  the 2015 TOU. But even if the Court entertains this argument, Plaintiff is not bound by the

9  continuing use clause—or any section of the 2015 TOU—because Coursera's 2015 sign-up page

10  did not give him sufficient notice of the TOU under the *Berman* test.

11        First, the sign-up screen did not provide reasonably conspicuous notice of the terms to which

12  Plaintiff would be bound. *Berman*, 30 F.4th at 857. When the TOU are disclosed through a

13  hyperlink, reasonably conspicuous notice of the terms requires that "the fact that a hyperlink is

14  present must be readily apparent." *Id.* "Customary design elements denoting the existence of a

15  hyperlink include the use of a contrasting font color (typically blue) and the use of all capital

16  letters[.]" *Id.* Neither of these elements is present here. In the sign-up webpage, Coursera merely

17  bolded "Terms of Service" without adding a contrasting color, using all capital letters, underscoring

18  the text, or otherwise indicating that the text was hyperlinked. (Dkt. 38-2.) Thus, Plaintiff would

19  have been "required to hover [his] mouse over otherwise plain-looking text or aimlessly click on

20  words on [the] page in an effort to 'ferret out hyperlinks.'" *Berman*, 30 F.4th at 857. Similar

21  formatting was explicitly held insufficient in *Berman*, where "<u>Terms & Conditions</u>" was

22  underscored, but no contrasting color was used to "set apart" the hyperlink from the surrounding

23  text. 30 F.4th at 857, 861.

24        Furthermore, the text disclosing the existence of the agreement is printed in small gray font

25  against a slightly lighter gray background, whereas the font used in the surrounding website

26  elements is larger and set against a contrasting background. (Dkt. 38-2); *see Berman*, 30 F.4th at

27  856–57 (finding notice not conspicuous where relevant text "printed in a tiny gray font considerably

28  smaller than the font used in the surrounding website elements[.]"). Specifically, the "comparatively

1   larger font" of the "Sign Up" button in the large, contrasting, bright blue box "draw[s] the user's

2   attention away" from the critical text. *Id.* at 857; *see also Serrano v. Open Rd. Delivery Holdings*,

3   Inc., 666 F. Supp. 3d 1089, 1093, 1096 (C.D. Cal. 2023) (finding similar sign-up screen did not

4   supply reasonably conspicuous notice of terms of use containing arbitration clause). If anything, the

5   sign-up page here is worse than the webpage in *Berman*: unlike the screen displayed in Appendix B

6   of the *Berman* decision, the hyperlink to the TOU here is below the "Sign Up" button, meaning a

7   user could enter their name and password and click "Sign Up" without reviewing the remainder of

8   the page (and seeing the camouflaged hyperlink). (Dkt. 38-2); *see Lopez v. Dave Inc.*, No. 22-CV-

9   04160-VC, 2022 WL 17089824, at *2 (N.D. Cal. Nov. 21, 2022), *aff'd*, No. 22-16915, 2023 WL

10  8594393 (9th Cir. Dec. 12, 2023).



**Figure 1**

23  The absence of reasonably conspicuous notice, alone, is fatal to formation. *See Massel v.*

24  *SuccessfulMatch.com*, No. 23-CV-02389-PCP, 2024 WL 802194, at *1, *5 (N.D. Cal. Feb. 27,

25  2024) (finding sign-up page without conspicuous notice of terms failed *Berman* test even though

26  user had to explicitly check a box agreeing to the service agreement); *Serrano*, 666 F. Supp. 3d at

27  1093, 1096 (finding similar sign-up page failed *Berman* test even where the text stated "[b]y

28  creating an account, you agree to the Amuse Privacy Policy and Terms of Use."); *Rocha v. Urb.*

1   *Outfitters, Inc.*, No. 23-CV-00542-AMO, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (same).

2   Consequently, no contract was formed when Plaintiff created a Coursera account in 2015, and

3   Plaintiff, therefore, is not bound by the "continuing use" clause.

4          The 2015 sign-up screen also suffers from a second infirmity: it did not require Plaintiff to

5   unambiguously manifest his assent to the 2015 TOU by, for example, requiring Plaintiff to scroll

6   through the TOU or to click a box acknowledging that he would be bound to the TOU prior to

7   signing up. Furthermore, the text disclosing the TOU did not sufficiently advise Plaintiff that

8   clicking "Sign Up" would bind him to the TOU. "A user's click of a button can be construed as an

9   unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking

10  will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. Here,

11  the text states "By creating an account, I accept Coursera's Terms of Service and Honor Code."

12  (Dkt. 38-2.) Courts in this District have declined to fined unambiguous consent and contract

13  formation where the button does not match the instructions in the text. *See, e.g.*, *Maree v. Deutsche*

14  *Lufthansa AG*, No. 20-885, 2021 WL 267853, at *3–4 (C.D. Cal. Jan. 26, 2021) (no contract

15  formation where user clicked button reading "Complete Booking"—even though immediately

16  above the button were the words "By selecting to complete this booking I acknowledge that I have

17  read and accept the . . . Terms of Use."); *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023

18  WL 2314868, at *5 (N.D. Cal. Feb. 28, 2023) (no unambiguous consent where text disclosing TOU

19  said "By clicking the 'Get Started' button . . . I agree to the Terms of Use," but the button said

20  "CHECK LISTINGS."); *see also Lee v. Intelius Inc.*, 737 F.3d 1254, 1259–1262 (9th Cir. 2013)

21  (finding no contract formed where user believed he was purchasing a background check by clicking

22  "YES And show me my report" even though text disclosing TOU said "By clicking 'YES' I have

23  read and agree to the Offer Details displayed to the right.").

24         Coursera could have easily remedied this deficiency, but instead chose to design a "Sign

25  Up" button disconnected from the text containing the purportedly binding TOU. *See Sellers*, 73 Cal.

26  App. 5th at 475–76 (noting that providers "have complete control over the design of their websites

27  and can choose from myriad ways of presenting contractual terms to consumers online," including

28  clickwrap agreements "that eliminate any uncertainty as to the consumer's notice of contractual

terms and assent to those very terms."). Coursera has failed to establish that Plaintiff agreed to the 2015 TOUs when he signed up for Coursera.

ii.        *Email and Banner Notices*

Next, Coursera says that it notified users—including Plaintiff—of updates to its TOU via email and through "banners" on its homepage three times between 2020 and 2023. (Dkt. 38 at 5–7.) Coursera argues that Plaintiff manifested assent to the updated TOU—which included an arbitration clause—by continuing to use Coursera's services after it sent and posted these notices. (*Id.* at 14–16.) The main problem here is that these emails and banners are not contract formation points. *See Quamina v. JustAnswer LLC*, No. 22-CV-06051-JD, 2024 WL 950157, at *6 (N.D. Cal. Mar. 5, 2024). The emails and banners were not "temporally coupled" with the act of joining Coursera in 2015, so they cannot cure the lack of formation at the outset when Plaintiff signed up. *Id.*

Furthermore, even if Plaintiff had manifested assent to the 2015 TOU by registering for Coursera, the continuing use clause, alone is insufficient to bind Plaintiff to unilateral TOU changes. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) (holding change-of-terms provision and continued use, alone, is insufficient to bind the parties to subsequent versions of the contract). "[A] revised contract is merely an offer and does not bind the parties until it is accepted." *Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007) ("[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side."). Therefore, to bind Plaintiff to revised TOU, Coursera must prove that he had inquiry notice of the revised terms under the *Berman* test. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1098 (9th Cir. 2023). Coursera doesn't even attempt to do so, and its motion should be denied for that reason. In any event, the email and the banner notices fail both prongs of the *Berman* test.

With respect to the emails, Coursera failed to satisfy its burden to prove that the emails give reasonably conspicuous notice of the TOU because it provided nothing beyond the bald assertion that Plaintiff received the at-issue emails. (Dkt. 38-1 ¶ 14.) Coursera does not attach any business records bearing this out, nor is there any indication that the emails were ever opened. (*Id.*) Assuming Plaintiff received the emails, and they were not sent to spam, they would have appeared

in his inbox amidst all of his other read and unread emails. On average, people receive more than

120 emails per day[4] and, in 2022, the average open rate for emails sent by educational institutions

was only 35.4%.[5] Coursera doesn't demonstrate Plaintiff received any TOU update email, never

claims that Plaintiff actually opened these emails, and points to nothing that indicates that the email

subject line, buried in an inbox with hundreds of other emails, provided reasonably conspicuous

notice of the TOU. *See Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021),

*aff'd*, 65 F.4th 1093 (9th Cir. 2023) (holding user not bound to updated terms where defendant sent

email notification but failed to prove that plaintiff ever opened the email, reviewed the new terms,

or otherwise assented). Furthermore, a "'reasonably prudent user' would not expect to be sent, over

[email], a contract governing an internet transaction that in [his] mind has already occurred"—five

years earlier in the case of the 2020 email—accordingly "a reasonable user would think [himself]

free to delete [the emails]." *Quamina*, 2024 WL 950157, at *7. The emails, thus, fail the first

*Berman* factor.

Even if Plaintiff did receive and open the emails, the second *Berman* factor is not met

because the emails do not require the user to take any action that unambiguously manifests assent to

the terms. Ninth Circuit precedent is clear that to be binding, "the notice must explicitly notify [the]

user of the legal significance of the action she must take to enter into a contractual agreement."

*Berman*, 30 F.4th at 858. The *Nguyen* court explicitly held that:

> [W]here a website makes its terms of use available via a conspicuous hyperlink on
> every page of the website but otherwise provides no notice to users *nor prompts
> them to take any affirmative action to demonstrate assent*, even close proximity of
> the hyperlink to relevant buttons users must click on—without more—is
> insufficient to give rise to constructive notice.

763 F.3d at 1178–79 (emphasis added). Continued use can satisfy this affirmative action

requirement but only "where the website contains an *explicit textual notice* that continued use will

act as a manifestation of the user's intent to be bound." *Id.* at 1177 (emphasis added); *see also*

---

[4]    Matt Plummer, *How to Spend Way Less Time on Email Every Day*, HARVARD BUSINESS REVIEW (Jan. 22, 2019), https://hbr.org/2019/01/how-to-spend-way-less-time-on-email-every-day.

[5]    Sam Cahoon, *Email Open Rates By Industry (& Other Top Email Benchmarks)*, HUBSPOT (June 29, 2023), https://blog.hubspot.com/sales/average-email-open-rate-benchmark.

*Berman*, 30 F.4th at 857–58 ("The presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical to the enforceability of any browsewrap-type agreement.") (quotations omitted).

Here, none of the three update emails required Plaintiff to take any action to manifest his assent, nor did they state that continued use of Coursera's services would constitute assent. (Dkt. 38-6, dkt. 38-7, dkt. 38-8.) This alone precludes contract formation. *Jackson*, 65 F.4th at 1100 (finding email notice of updated terms insufficient where no evidence that the email "informed [users] that continuing to complete deliveries or use the app would bind drivers to the new terms."). In *Sifuentes v. Dropbox, Inc.*, for example, the court determined that *twelve* analogous email notices of updated terms of use—at least one of which explicitly mentioned an arbitration clause—were insufficient for formation because "[e]ven if the email alone could be considered 'reasonably conspicuous notice,' Plaintiff took no action to unambiguously manifest his assent." No. 20-CV-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022), *appeal dismissed,* No. 22-16367, 2023 WL 2455684 (9th Cir. Jan. 20, 2023). Furthermore, the fact that the first email notice says, in the body of the email, that the TOU has "[u]pdated arbitration language" is inconsequential for this inquiry. (Dkt. 38-6.) "The question [here] is not whether [Plaintiff] may have been aware of the mandatory arbitration provision in particular, but rather whether [he] can be deemed to have manifested assent to any of the terms and conditions in the first place." *Berman*, 30 F.4th at 858.

Some courts have found email notice followed by continued use sufficient to bind a user; however, these cases involved email notice that explicitly informed the user that continued use of the service would constitute assent to the updated terms. *See, e.g.*, *Revitch v. Uber Techs., Inc.*, No. 18-CV-2974-PSG-GJS, 2018 WL 6340755, at *1 (C.D. Cal. Sept. 5, 2018) (noting that the body of the email "explained that **continued use** of the App would constitute **assent** to the updated Terms.") (emphasis added); *Whalen v. Facebook, Inc.*, No. 20-CV-06361-JST, 2022 WL 19934419, at *4 (N.D. Cal. Apr. 11, 2022) (the in-app notification clearly stated, "**Continuing** to **use** the app means you **accept** these updates.") (emphasis added). Such language is not present in the email notices sent here. This distinction is even more important post-*Berman*. Finding formation without this "continuing use" language would effectively eliminate the second element of the *Berman* test

1    requiring unambiguous manifestation of assent. *Berman*, 30 F.4th at 857.

2        Coursera's banner notices are an even clearer case, failing both elements of the *Berman* test.

3    The 2021 banner notice ("2021 Banner") states: "*Starting January 1, 2021, our updated Terms of*

4    *Use and Privacy Notice are in effect. Please visit each respective page to find out more about the*

5    *updates.*" (Dkt. 38 at 5.) Notably, Coursera does not provide an image of what the 2021 Banner

6    looked like (which alone is insufficient to carry its burden) but assuming it is substantively the same

7    as the 2022 and 2023 banners (dkt. 38-9, dkt. 38-10), these browsewrap agreements do not present

8    the TOU in a sufficiently conspicuous manner to satisfy the first *Berman* prong. As demonstrated in

9    ***Figure 2***, below, the banners appear in a light blue box near the top of the webpage (meaning that

10   light blue hyperlinked text does not stand out against the blue background), the text is significantly

11   smaller than the surrounding text, and the comparatively larger text and colorful images on the rest

12   of the webpage draws the eye away from the banner. *See Berman*, 30 F.4th at 856–57. Furthermore,

13   the hyperlinked text is not bolded, underscored, or in all caps, and change in color, alone, has been

14   found insufficient to provide conspicuous notice of a hyperlink. *See Colgate v. JUUL Labs, Inc.*,

15   402 F. Supp. 3d 728, 765–66 (N.D. Cal. 2019).



***Figure 2***

28   More importantly, this is classic browsewrap that fails *Berman's* second element because it

doesn't require any manifestation of assent at all, and the text of the notice does not state that continued use of the website constitutes assent. *Berman*, 30 F.4th at 858 (no unambiguous manifestation of assent where website "did not indicate to the user what action would constitute assent to those terms and conditions."). Coursera notes that "[t]here was no option for learners to dismiss the banner." (Dkt. 38 at 5–6.) But that is part of the problem: the outcome here might be different had Coursera required users to click an "I Accept" button in order to dismiss the banner and continue to use the website, or explicitly told users that continued use of the website would bind them to the hyperlinked terms. *See Kaplan v. Athletic Media Co.*, No. 23-CV-00229-JST, 2023 WL 8587981, at *4 (N.D. Cal. Dec. 8, 2023) (updated TOU "appeared on subscribers' screens, shaded out the rest of the webpage in black, and prevented users from accessing content on the website and mobile application until users hit the 'I Accept' button."). Consequently, Coursera fails to establish that Plaintiff was bound to the TOU via the banners.

Additionally, the fact that Coursera sent three emails and posted three banners over the course of three years does not change the outcome because "aggregating individually insufficient forms of notice does not somehow add up to a positive." *Quamina*, 2024 WL 950157, at *7.

### 2. Plaintiff Did Not Manifest Assent When He Enrolled in a Paid Certification Course in 2022.

Finally, Coursera argues that Plaintiff agreed to its 2022 TOU when he enrolled in a paid certification course because the 2022 TOU were presented as part of the checkout screen flow. (Dkt. 38 at 14.) As with the 2015 sign-up page, the manner the terms were presented on the payment screen fails the *Berman* inquiry notice test.

First, the payment page did not provide reasonably conspicuous notice of the terms and conditions. As with the 2015 sign-up page, the text disclosing the existence of the TOU on the payment page is "is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements." *Berman*, 30 F.4th at 856, *see Figure 3* below. And, again, the user's eye is drawn away from this text by the "comparatively larger font" of the "Pay Now" button in the large bright blue box. *Id.* at 857. The fact that the hyperlinked text is underscored and is in a contrasting color doesn't save Coursera, especially because the hyperlink to the Terms of Use is

1    below the "Pay Now" button, meaning a user could enter their credit card information and click

2    "Pay Now" without reading the remainder of the text containing the TOU hyperlink. *See Lopez*,

3    2022 WL 17089824, at *2. The notice here is even worse than *Berman* in some respects because,

4    there, the text explicitly stated that the "Terms & Conditions" included "mandatory arbitration." 30

5    F.4th at 854. The text on the payment screen here does not mention arbitration at all. *See Lopez*,

6    2023 WL 8594393, at *1 (noting that absence of "mandatory arbitration" language made the notice

7    "less conspicuous than in *Berman*.").

8

9

10

11

12

13

14

15

16

17

18

19



***Figure 3***

20          Second, the lack of any unambiguous manifestation of assent is also fatal to contract

21   formation. This case is remarkably like *Berman*: defendants in both cases rely on the plaintiffs' acts

22   of clicking a large button—"Pay Now" in this case and "Continue" in *Berman*—as manifestation of

23   assent to the websites' terms of service. *See Berman*, 30 F.4th at 857. But, as discussed above, "[a]

24   user's click of a button can be construed as an unambiguous manifestation of assent only if the user

25   is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an

26   agreement." *Id.* In *Berman* the webpage stated, "I understand and agree to the Terms &

27   Conditions," *id.* at 858, here, Coursera's payment page states, "I agree to the Terms of Use . . ."

28   (dkt. 38-11.) As in *Berman*, the proximity of the relevant text to the button is insufficient to

manifest assent because the text "d[oes] not indicate to the user what action would constitute assent to those terms and conditions." 30 F.4th at 857.

The two cases Coursera relies on for support were decided pre-*Berman* and are otherwise inapposite because, there, the relevant webpages containing the button clicked on by the plaintiffs was near text that explicitly stated that clicking the button constituted consent to the terms of use, a feature conspicuously absent here. *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (text containing TOU stated: "By clicking 'Place Order,' you agree to our Terms of Use."); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) (text containing TOU stated: "By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement."). There was no comparable manifestation of assent here; therefore, Plaintiff did not agree to be bound by the 2022 TOU—or the arbitration clause therein—when he purchased the paid Coursera certificate course.

### D.    To the Extent the Court is Inclined to Find Contract Formation Occurred, the Court Should First Permit Limited Discovery Into the Issue.

Coursera has fallen far short of proving contract formation by a preponderance of the evidence, and its motion to compel arbitration should be denied for that reason. If, however, the Court is inclined to find that contract formation occurred, Plaintiff should be given the opportunity to conduct limited discovery to establish that genuine disputes of material fact remain. Courts may order discovery, and potentially a trial, "in connection with a motion to compel arbitration" if "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999); *Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020).

Here, the existence of an arbitration agreement is in dispute, and Coursera's evidentiary showing is riddled with holes that must be filled before a finding of contract formation could occur. Most glaringly, Coursera has failed to produce the version of its TOU that was in place when Plaintiff signed up for Coursera in 2015, which Coursera claims is the foundational document that allows Plaintiff to be bound to the arbitration clauses in later TOU versions. Instead, Coursera presents an untested declaration filled with conclusory assertions about Coursera's business

practices and the notice that Plaintiff supposedly received regarding Coursera's ever-evolving TOUs. Plaintiff should be allowed to question Coursera's representations and seek at least the following discovery relevant to the issue of contract formation: (1) the complete website flow and the full webpages in which the screenshots of Coursera's sign-up page, (dkt. 38-2) and payment page (dkt. 38-11) are embedded, instead of just one-off partial screenshots; (2) confirmation that the screenshots presented reflect the actual screens that Plaintiff would have been presented with—*e.g.*, depending on whether he signed up or made purchases on his phone or on a desktop; (3) the records that reflect whether any email notices regarding Coursera's TOU changes were received or opened by Plaintiff; and (4) information about how Coursera's email notices (dkt. 38-6) would actually appear in a user's inbox.

## IV.    CONCLUSION

Because Coursera waived any right it may have had to arbitrate this dispute and, in any event, it has failed to establish that Plaintiff manifested his assent to any arbitration agreement, Coursera's motion to compel arbitration should be denied. Alternatively, Plaintiff respectfully requests that this Court hold the motion to compel in abeyance pending discovery and a jury trial on arbitrability.

Respectfully Submitted,

Dated: May 10, 2024

By: /s/ Hannah Hilligoss
*One of Plaintiff's Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.943

Michael Ovca (*pro hac vice*)
movca@edelson.com
Hannah Hilligoss (*pro hac vice*)
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.637

*Counsel for Plaintiff and the Putative Class*