United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMAN GHAZIZADEH,<br><br>Plaintiff,<br><br>v.<br><br>COURSERA, INC.,<br><br>Defendant. | Case No.   23-cv-05646-EJD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 38 |

Before the Court is Defendant Coursera, Inc.'s motion to compel arbitration.  ECF No. 38 ("Mot." or "Motion").  Having considered the parties' submissions, the relevant law, the record in this case, and oral argument, the Court GRANTS Coursera's Motion.

## I.      BACKGROUND

Plaintiff Iman Ghazizadeh brings this putative class action complaint against Coursera to "put an end to its unlawful practice of disclosing its users' personally identifiable video-viewing information in violation of the Video Privacy Protection Act."  Complaint ("Compl."), ECF No. 1 at 1.  Coursera is an educational technology company that provides various educational courses via its interactive online platform.  *Id.* ¶ 1.  According to the complaint, consumers like Plaintiff take the online classes on the Coursera platform by enrolling in courses made up of various pre-recorded lecture videos that they can complete at their own pace.  *Id.* ¶ 2.  Consumers may enroll in free courses or otherwise purchase access to Coursera's library of pre-recorded video lectures and other educational videos.  *Id.*

Plaintiff created a Coursera account on December 7, 2015.  Plaintiff's Opposition to Motion to Compel ("Opp."), ECF No. 39.  Plaintiff alleges that, unbeknownst to consumers, when they view a video on the Coursera platform, Coursera discloses a record of their viewing history to Meta Platforms together with personally identifiable information concerning the consumer.  *Id.* ¶ 3.  Plaintiff contends that this violates the Video Privacy Protection Act ("VPPA"), which allows consumers to recover damages from "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

On November 1, 2023, Plaintiff filed the present suit on behalf of himself and the putative class members against Coursera for a single cause of action: violation of the VPPA.

On January 12, 2024, Coursera filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 20.  That motion was fully briefed on March 1, 2024.  On April 22, 2024, Coursera filed an administrative motion to continue the motion to dismiss hearing date, notifying the Court that it intended to move to compel arbitration.  ECF No. 36.  Since the question of whether Plaintiff should be compelled to arbitrate is a threshold issue, Coursera requested that the motion to compel arbitration be heard concurrently with the motion to dismiss. *Id.*  The Court granted Coursera's request, and the briefing on the motion to compel arbitration was complete on May 17, 2024.  Coursera's Reply in Support of Motion to Compel Arbitration ("Reply"), ECF No. 40.

The Court found the motion to dismiss suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  On June 6, 2024, the Court heard oral argument on the motion to compel arbitration.

## II.    LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As this

United States District Court
Northern District of California

1     language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase,*

2     *Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  And like other contracts, arbitration agreements are

3     subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability."  *Lim*

4     *v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

5           In determining whether to compel a party to arbitrate, the court must determine: "(1)

6     whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

7     encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir.

8     2013) (internal quotation marks and citation omitted).  Once it is established that a valid

9     agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show

10    that the agreement should not be enforced.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531

11    U.S. 79, 92 (2000).

## III.      DISCUSSION

13          Coursera advances two theories to establish Plaintiff's unambiguous consent to arbitration.

14    *First*, in registering for an account by inputting his email address into Coursera's 2015 sign-in

15    flow ("2015 Sign-Up Screen"), Plaintiff agreed to Coursera's then-operative Terms of Use

16    ("TOU").  Opp. 3 (citing Declaration of Mustafa Furniturewala ("Furniturewala Decl."), ECF No.

17    38-1, ¶ 7).  According to Coursera, the 2015 TOU included a clause "making clear" that continued

18    use of Coursera's platform would constitute acceptance to future updates to Coursera's TOU.

19    Furniturewala Decl. ¶ 8.  Coursera's updated 2021 TOU, 2022 TOU, and 2023 TOU, which

20    Coursera argues Plaintiff was notified of and agreed to, each contained a provision requiring

21    submission of all disputes related to Coursera's services to binding arbitration (the "Arbitration

22    Agreement").  Opp. 4 (citing Furniturewala Decl. ¶ 10).  Thus, Plaintiff assented to the Arbitration

23    Agreement by continuing to use Coursera's services after receiving notice of the updated TOU.

24    *Second*, Plaintiff again purportedly agreed to the 2022 TOU, which contained the Arbitration

25    Agreement, when he purchased a Coursera certification in 2022 as part of the checkout process for

26    the purchase (the "2022 Checkout Flow").

27          Before reaching the parties' arguments on formation, the Court will evaluate the threshold

28    Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

issues of waiver and delegation.

### A. Whether Coursera Waived Its Right to Arbitrate

Plaintiff argues that Coursera waived its right to arbitrate by seeking judicial resolution of the merits through a motion to dismiss despite being aware of the Arbitration Agreement "since the outside of this lawsuit." Opp. 4–5.

Plaintiff, as the party opposing arbitration, "bears the burden of showing waiver," but the burden is "no longer heavy." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (quotations omitted). Plaintiff must demonstrate: (1) knowledge of an existing right to compel arbitration, and (2) intentional acts inconsistent with that existing right. *Id.*

As to the first prong, Coursera does not appear to dispute that it had knowledge of its right to compel arbitration. Rather, Coursera argues that its arbitration provisions "have undergone multiple updates over the years," and "there was need for factual clarification between the allegations in [Plaintiff's] Complaint and Coursera's records regarding key dates in this matter, including Plaintiff's account creation date and which Terms (and arbitration provision) Plaintiff agreed to." Reply 6. Coursera does not identify when it contends it became aware of the right to arbitrate, but nevertheless, "[k]nowledge of a contractual right to arbitrate is imputed to [Coursera as] the contract's drafter." *In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) (quoting *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011)). The first prong has been satisfied.

Regarding the second prong, Plaintiff argues that Coursera acted inconsistently with its right to arbitrate by (1) filing a Rule 12(b)(6) motion to dismiss, (2) "communicating its intent to litigate this case on the merits in this forum to both Plaintiff and the Court," and (3) not withdrawing its motion to dismiss. Opp. 5. "[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (internal quotation marks and citation omitted). Courts "consider the totality of the parties' actions" in evaluating the second

element of this test.  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023).  The essential question is whether "those actions holistically 'indicate a conscious decision ... to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with the right to arbitrate.'" *Armstrong*, 59 F.4th at 1015.

Although "[l]itigating motions to dismiss instead of requesting that the matter go to an arbitrator" may be "inconsistent with a desire to arbitrate," courts have found waiver where the motion to dismiss "did not contain any jurisdictional arguments" or where parties moved to compel arbitration after "the Court denied their motion to dismiss." *Leo Middle E. FZE v. Zhang*, No. 21-CV-03985-CRB, 2022 WL 207663, at *4 (N.D. Cal. Jan. 24, 2022) (finding waiver where parties moved to compel arbitration after the motion to dismiss was denied, after participating in discovery, and the motion the dismiss lacked any jurisdictional arguments); *see also Sequoia Benefits & Ins. Servs., LLC v. Costantini*, 553 F. Supp. 3d 752, 759 (N.D. Cal. 2021) (finding waiver where defendants raised arguments in motion to dismiss that went "to merits of [plaintiff's] claims rather than contesting mere procedural issues").

The Court finds that, under the totality of the circumstances, Plaintiff has failed to demonstrate that Coursera waived its right to arbitrate.  Plaintiff's cited cases involve procedural circumstances not present here.  For instance, *Leo Middle* found waiver where the parties moved to arbitrate after the motion to dismiss was denied, after the parties participated in discovery, and the motion to dismiss lacked threshold jurisdictional arguments.  *Leo Middle*, 2022 WL 207663, at *4.  *Sequoia Benefits* found waiver where the defendants' motion to dismiss similarly relied only on arguments going to the merits, defendants reversed the position they took before the court on arbitration in the case management statement, and defendants filed counterclaims with an accompanying request for a jury trial.  *Sequoia Benefits*, 553 F. Supp. 3d at 759.  And *Kater* found waiver where the defendant moved to compel arbitration after three years and three months of litigation, and after successfully moving to dismiss the complaint but unsuccessfully defending an appeal.  *Kater v. Churchill Downs Downs Inc.*, No. 3:15-CV-00612-RBL, 2018 WL 5734656, at *1 (W.D. Wash. Nov. 2, 2018); *see also Slaten v. Experian Info. Sols., Inc.*, No. 21-CV-09045-

United States District Court
Northern District of California

MWF, 2023 WL 6890757, at *4 (C.D. Cal. Sept. 6, 2023) (finding waiver where defendant moved to compel arbitration after eighteen months of litigation, met and conferred with Plaintiff's counsel, joined a motion for a protective order, sought to extend discovery deadlines multiple times, responded to written discovery, produced documents, participated in discovery conferences, and submitted a Joint Rule 26(f) Report, and participated in a court-ordered mediation); *Stickles v. Atria Senior Living, Inc.*, No. 20-CV-09220-WHA, 2023 WL 2062949, at *2 (N.D. Cal. Feb. 16, 2023) (finding waiver where "defendants waited until after the outcome of summary judgment" to move to compel arbitration); *FBC Mortg., LLC v. Skarg*, No. 23-CV-00143-CRB, 2023 WL 6933359, at *3 (N.D. Cal. Oct. 19, 2023) (finding waiver where "Defendants waited over eight months, and a month and a half after receiving an adverse ruling on their motion to dismiss, before they moved to compel arbitration").  In each of the above cases, the facts supported a finding that the party seeking arbitration had deliberately delayed moving for arbitration.

Here, Coursera indicated an intent to move to compel arbitration roughly six months after the complaint was filed.  Its first basis for dismissal in its pending motion to dismiss is the threshold jurisdictional issue that Plaintiff lacks Article III standing.[1]  Although Coursera has also moved to dismiss on substantive grounds, it was required to present all arguments—jurisdictional and merit-based—under Rule 12(g) or risk waiving Rule 12 defenses.  No discovery has been exchanged, and the Court has not ruled on the pending motion to dismiss.  Thus, the Court finds this case more like those where courts declined to find waiver.  *See Wheeler v. LG Elecs. USA, Inc.*, No. 22-CV-00459-NOD-JBAM, 2024 WL 51353, at *6 (E.D. Cal. Jan. 4, 2024) (finding no waiver despite pending motion to dismiss "[d]ue to the absence of any discovery being conducted, an answer being filed, or meaningful case management proceedings being conducted"); *United Specialty Ins. Co. v. Clean & Sober Media LLC*, No. 2:20-CV-02765-RGK-KS, 2021 WL 3623300, at *4–5 (C.D. Cal. Apr. 16, 2021) (finding no waiver and noting "the Ninth Circuit has

[1] Plaintiff suggests that Coursera, "sensing an adverse ruling," was motivated to move to compel arbitration after seeing the strength of Plaintiff's arguments in his opposition to Coursera's motion.  Opp. 7.  The Court finds this argument unconvincing, and Plaintiff has not identified any instances of courts in this Circuit finding waiver under similar circumstances.

Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

found waiver" when a "motion to dismiss was coupled with prolonged delays ... and significant additional litigation activity"); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, No. 23-CV-1887-JLS, 2024 WL 759893, at *8 (S.D. Cal. Feb. 23, 2024) (finding no waiver despite three-year delay where defendant filed motion disputing the court's jurisdiction); *Fries v. Wells Fargo Bank*, No. 23-CV-07321-SPG, 2024 WL 1816931, at *3 (C.D. Cal. Feb. 22, 2024) (finding defendant's filing of a motion to dismiss that "was never considered by this Court" "not the kind of participation in litigation that constitutes a waiver of the right to compel arbitration").

The Court acknowledges that Coursera could have withdrawn its pending motion to dismiss, as Plaintiff points out. Nevertheless, given the early stage of the case and the absence of other activity in this case, it is not apparent that Coursera has "choose[n] to delay [its] right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Thus, Plaintiff has not established waiver.

**B.    Delegation**

In its opening brief, Coursera contends that the parties delegated the questions of arbitrability to the arbitrator, and the "only remaining question" is whether the relevant delegation provision in the arbitration agreement Coursera seeks to enforce is valid. Mot. 13. The Court agrees with Plaintiff that contract formation is a threshold issue for the Court to decide.[2] While parties can typically delegate threshold issues such as validity and scope, a party who "contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *3 (N.D. Cal. July 25, 2023) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991)); *see also Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) ("parties cannot delegate issues of formation to the arbitrator"). Indeed, Section 4 of the FAA mandates a court be satisfied that an arbitration agreement exists before compelling arbitration.

---

[2] Counsel for Coursera agreed at the hearing that whether a valid agreement exists is for the Court to decide.

Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement").  The Court will thus proceed to evaluate whether a valid arbitration agreement exists.

### C.    Whether a Valid Agreement to Arbitrate Exists

As stated above, Coursera relies on two independent theories to show Plaintiff's agreement to arbitrate.  Plaintiff argues Coursera cannot meet its burden to establish Plaintiff's manifestation of assent to the Arbitration Agreement under either theory because "Plaintiff was never presented with reasonably conspicuous notice of the TOU where the notice required unambiguous manifestation of assent to the terms."  Opp. 11.

The Court will evaluate both theories of assent below.

### 1.    The 2015 Sign Up-Screen

As to Coursera's first theory, it contends that Plaintiff signed up for Coursera through the 2015 Sign-Up Screen shown below.



Furniturewala Decl., Ex. A.

In signing up for an account, Plaintiff purportedly agreed to the 2015 TOU, which

United States District Court
Northern District of California

contained a "continuing use" provision advising users that their continued use of Coursera's platform would constitute binding acceptance of later-revised Terms.  The "continuing use" clause stated:

> We reserve the right to revise the Terms at our sole discretion at any time. Any revisions to the Terms will be effective immediately upon posting by us. For any material changes to the Terms, we will take reasonable steps to notify you of such changes. *In all cases, your continued use of the Services after publication of such changes, with or without notification, constitutes binding acceptance of the revised Terms.*

Furniturewala Decl. ¶ 8 (emphasis added).

The relevant Arbitration Agreement came into effect in 2020.  Reply 7, n. 3.  Coursera later notified Plaintiff of updates to its TOU through emails and website banners.  *Id.* at 11. Coursera contends that these updates notified Plaintiff that he was bound to the updated terms, which included the arbitration provision at issue here.

To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13.  Parties may manifest assent through their conduct, "[h]owever, the conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."  *Berman v. Freedom Fin. Network, LLC ("Berman")*, 30 F.4th 849, 855 (9th Cir. 2022) (cleaned up).  The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration" (*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014)), and with equal force to contracts formed online.  *Berman*, 30 F.4th at 855–56.

Online agreements fall on a spectrum ranging from "clickwrap" to "browsewrap." *Berman*, 30 F.4th at 856.  "[C]lickwrap" agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed.  *Id.*  Courts "have routinely found clickwrap agreements enforceable," because the consumer has received notice of the terms being offered and, "knows or

1    has reason to know that the other party may infer from his conduct that he assents" to those terms.

2    *Id.* Browsewrap agreements, on the other end of the spectrum, are agreements in which a website

3    offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent

4    to those terms simply by continuing to use the website.  *Id.*  Courts are "more reluctant to enforce

5    browsewrap agreements because consumers are frequently left unaware that contractual terms

6    were even offered, much less that continued use of the website will be deemed to manifest

7    acceptance of those terms."  *Id.*

8         Plaintiff contends that the 2015 Sign-Up Screen is closer to a browsewrap agreement, but

9    Coursera argues it is more akin to the hybrid "sign in wrap."  In a sign-in wrap, or a "modified

10   clickwrap agreement," a user is "notified of the existence of the website's terms of use and

11   advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing

12   to the terms of service."  *Moyer*, 2023 WL 4771181, at *4.  The 2015 Sign-Up Screen is most like

13   a "modified clickwrap agreement" or "sign-in wrap" because, as described below, Plaintiff was

14   notified of the existence of the Coursera's terms of use and advised that "[b]y creating an account,

15   [Plaintiff] accept[ed] Coursera's Terms of Service."  A user is not required to click an "I agree"

16   button after being shown the terms of service, but the 2015 Sign-Up Screen does inform users that

17   if they click a button (the "Sign Up" button), they agree to the terms of service.  However, as

18   Plaintiff acknowledges, regardless of how the 2015 Sign-Up Screen is categorized, "ultimately the

19   same inquire notice test applies because 'it is the degree of notice provided, not the label, that is

20   determinative.'"  Opp. 11 (quoting *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 950 (2022)).

21        Under California law, a sign-in wrap agreement may be an enforceable contract based on

22   inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the

23   consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

24   checking a box, that unambiguously manifests his or her assent to those terms."  *Berman*, 30 F.4th

25   at 856 (applying identical New York and California law as both dictated the same outcome).

26

27

28   Case No.: 23-cv-05646-EJD
     ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1

### a. Whether the 2015 Sign-Up Screen Provided Reasonably Conspicuous Notice of the Terms

2

To be conspicuous, notice "must be displayed in a font size and format such that the court

3

can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at

4

856. While terms may be disclosed through hyperlinks, the presence of a hyperlink "must be

5

readily apparent," and "[s]imply underscoring words or phrases ... will often be insufficient to alert

6

a reasonably prudent user that a clickable link exists." *Id.* at 857 (citing *Sellers v. JustAnswer*

7

*LLC*, 73 Cal. App. 5th 444 (2021)). "The context of the transaction is a non-dispositive factor

8

under California law, used to evaluate whether a website's notice is sufficiently conspicuous.

9

Courts must still evaluate the visual aspects of the notice under the two-part test [the Ninth

10

Circuit] articulated in *Berman*." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th

11

Cir. 2024).

12

When Plaintiff signed up for his Coursera account in 2015, the dialog box above was in

13

place, he entered his name and email, created a password in the dialog box above, and then clicked

14

the "Sign Up" button. Furniturewala Decl. ¶ 7. Immediately below the "Sign Up" button was a

15

statement reading, "By creating an account, I accept Coursera's Terms of Service and Honor

16

Code." The words "Terms of Service" and "Honor Code" were neither underlined nor presented

17

in all capital letters, but they were bolded in a color darker than the other words in the statement.

18

The terms were also presented in a font size slightly smaller than, and in a different color than the

19

"Sign Up" button.

20

The bolded "Terms of Service" hyperlinked to the 2015 TOU, which included a provision

21

advising the user that their continued use of Coursera's platform would constitute "binding

22

acceptance" of later-revised Terms:

23

> We reserve the right to revise the Terms at our sole discretion at any time. Any

24

> revisions to the Terms will be effective immediately upon posting by us. For any material changes to the Terms, *we will take reasonable steps to notify you of such*

25

> *changes*. In all cases, *your continued use of the Services after publication of such*

26

> *changes, with or without notification, constitutes binding acceptance* of the revised Terms.

27

Furniturewala Decl. ¶ 8 (emphasis added).

28

Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1    Plaintiff argues that the 2015 Sign-Up Screen did not give him sufficient notice of the

2    terms of service under the *Berman* test because (1) Coursera merely bolded "Terms of Service"

3    without adding a contrasting color, using all capital letters, underscoring the text, or otherwise

4    indicating that the text was hyperlinked; (2) the text disclosing the existence of the agreement is

5    printed in small gray font against a slightly lighter gray background; and (3) the 2015 Sign-Up

6    Screen did not require Plaintiff to unambiguously manifest his assent to the 2015 TOU by

7    requiring Plaintiff to scroll through the TOU or to click a box acknowledging that he would be

8    bound to the TOU prior to signing up.  Opp. 12–14.

9                    **i.       The Context of the Transaction**

10    Courts look to both "the context of the transaction" and the "placement of the notice" when

11    conducting review under *Berman*.  The transactional context "is key to determining the

12    expectations of a typical consumer."  *Sellers*, 73 Cal. App. 5th at 481.  *Sellers* observed that "not

13    all internet users are alike," and when evaluating what constitutes inquiry notice of a website's

14    terms of use, "it is more appropriate to focus on the [website] providers which have complete

15    control over the design of their websites and can choose from myriad ways of presenting

16    contractual terms to consumers online."  *Id.* at 475–76.  "Given the breadth of the range of

17    technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to

18    terms and conditions to which they have no reason to suspect they will be bound."  *Id.* (citations

19    omitted).  *Sellers* found this "particularly true" when "the transaction is one in which the typical

20    consumer would not expect to enter into an ongoing contractual relationship, regardless of whether

21    the transaction occurs online or in person."  *Id.* at 476 ("[I]t is questionable whether a consumer

22    buying a single pair of socks, or signing up for a free trial, would expect to be bound by

23    contractual terms, and a consumer that does not expect to be bound by contractual terms is less

24    likely to be looking for them").  Thus, a user engaging in a full registration process, as opposed to

25    a one-time purchase, is more likely to expect a continuing relationship that would put her on

26    notice for a link to the terms of that continuing relationship.

27    The Ninth Circuit in *Keebaugh* recently considered a sign-in wrap agreement used when

28    Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

user-players of a video game app for Games of Thrones sign up for the app.  Users were presented with a screen that required users to press a "Play" button before they could access the game. *Keebaugh*, 100 F.4th at 1014.  As part of the sign-up process, users were required to advance through the sign-in screen which stated, "By tapping 'Play,' I agree to the Terms of Service."  *Id.* In reviewing the sign-in process, *Keebaugh* concluded that the context of the transaction was sufficient to establish that users contemplated entering into a continuing, forward-looking relationship governed by terms and conditions.  Users were notified prior to downloading the game that the app offers in-app purchases, and there was no time limit imposed by Warner Bros. on how long the user may access the game.  *Id.* at 1020.  "When downloading an app to one's own device," the Ninth Circuit explained, "the prudent internet user necessarily anticipates ongoing access to that app at the user's discretion—at least until the user deletes the app, conditions imposed on the use of the app change, or the user decides to simply stop playing the game."  *Id.* This was different from a typical one-and-done interaction between the user and a traditional website because of the user's "ongoing access to the app."  *Id.*

Here, Coursera is more like the mobile game app in *Keebaugh* than a "one-and-done" traditional website.  Like someone downloading a mobile game app, a user who signs up for Coursera "necessarily anticipates ongoing access to [Coursera] at the user's discretion" in order to continue viewing the pre-recorded videos.  *Keebaugh*, 100 F.4th at 1020.  This matters, because the "nature of downloading a mobile game to one's phone"—or signing up for a continuing service like Coursera—is "different than simply accessing a website."  *Id.*  In this instance, Plaintiff's access to Coursera's services "until deleted carries the connotation that the user will also have ongoing access to that app unless something material changes."  *Id.*  And like users of the mobile game app in *Keebaugh*, users of a service like Coursera know that they can continue to access Coursera's recorded videos.  *Id.*  Plaintiff's complaint underscores the ongoing nature of Coursera's services.  Plaintiff states that he "has consistently viewed videos on Coursera in order to complete various certificate programs."  Compl. ¶ 38.  And in 2022, Plaintiff purchased a certification with additional modules years after initially creating an account, which further

Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
13

United States District Court
Northern District of California

1    suggests Plaintiff contemplated a "continuing relationship" with Coursera.

2         The Court find that users of Coursera's services, a platform that offers online educational

3    courses via pre-recorded videos, would similarly expect (or should expect) their access to the

4    platform would be continual and governed by some terms of use.  Thus, the context-of-the-

5    transaction test from *Sellers* is satisfied.  *See Keebaugh*, 100 F.4th 1020 (noting forward-looking

6    nature of the parties' relationship and that "users would understand that their use of an app that

7    allows for in-app purchases would be governed by some terms of use"); *see also Oberstein*, 60

8    F.4th at 517 (context of transaction, where users engaged in "a full registration process" reflected

9    "the contemplation of some sort of continuing relationship that would have put users on notice for

10   a link to the terms of that continuing relationship") (quotations omitted).

### ii.    The Visual Placement of the Notice

12        Whether the 2015 Sign-Up Screen also satisfies the visual requirements to provide

13   conspicuous notice that "a reasonably prudent Internet user would have seen" presents a closer

14   question.  *Berman*, 30 F.4th at 856.  The Ninth Circuit in *Keebaugh* assessed whether the sign-in

15   screens for the Game of Thrones video game app satisfied the visual requirements to provide

16   conspicuous notice.  It concluded that it did.  Directly beneath the operative "Play" button was the

17   following: "By tapping 'Play' I agree to the Terms of Service" or "By tapping 'Play' I accept the

18   Terms of Use and acknowledge the Privacy Policy," depending on the app's version.  The court

19   found that the link to the terms of service was distinguished from the surrounding text by a

20   contrasting white font and emphasized through white borders outlining the hyperlinks.  The sign-

21   in screen also "lack[ed] clutter."  *Keebaugh*, 100 F.4th at 1020–21.  The design elements used "a

22   contrasting font color" making the notice legible on the dark background.  *Id.*

23        Other courts' recent evaluations of sign-in wrap agreements are instructive.

24        *Sellers* involved a website that allowed users to ask questions to trained professionals.

25   *Sellers*, 73 Cal. App. 5th at 456.  The sign-up page displayed a white box in which users could

26   enter their credit card information underneath a statement that provided "Unlimited conversations

27   with doctors—try 7 days for just $5. Then $46/month. Cancel anytime." *Id.*  Below the white box,

28   Case No.: 23-cv-05646-EJD
     **ORDER GRANTING MOTION TO COMPEL ARBITRATION**

United States District Court
Northern District of California

"in very small print" there was an advisement that "[b]y clicking 'Start my trial' you indicate that you agree to the terms of service and are 13+ years old." *Id.* The phrase "terms of service" was hyperlinked to another webpage with 26 pages of terms, including a binding arbitration clause and a class action waiver. *Id.* The court found this presentation and appearance insufficient to meet the visual requirements to provide conspicuous notice. *Sellers* declined to compel arbitration because the "textual notices on the [] website were insufficiently conspicuous to bind plaintiffs to the terms of service." *Id.* at 484. The court noted that unless the user was particularly savvy, it was unlikely they would recognize the notice statement, which appeared "in extremely small print, outside the white box containing the payment fields where the consumer's attention would necessarily be focused," and, although the terms were hyperlinked and underlined, they were not "set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters." *Id.* at 480–81 (footnote omitted).

In *Berman*, the Ninth Circuit evaluated two websites and determined the website provider's notice was insufficiently conspicuous to bind a consumer to the hyperlinked terms and conditions on each. *Berman*, 30 F.4th at 856–57. The first website had large orange letters across the top of the page welcoming the user who had visited the page. The second website stated at the top, "Shipping Information Required," and below that, "Complete your shipping information to continue towards your reward." *Id.* at 854. What followed were several fields requiring the user to input her name, address, telephone number, and date of birth. *Id.* Below a line instructing the user to "Select Gender," two buttons appeared side by side marked "Male" and "Female." *Id.* Below that was a large green button with text that stated, in white letters, "Continue »." *Id.* The user had to click on the "continue" button to proceed to the next page in the website flow. As with the first website, placed between the buttons allowing a user to select her gender and the large green "continue" button were the same two lines of text in tiny gray font stating, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." *Id.* The hyperlinks were underlined but again appeared in the same gray font as the rest of the sentence. In concluding that the online agreement was invalid for failing to include features that

1     would alert a reasonable user to its existence, the court emphasized that the text disclosing the

2     existence of the terms was printed in an inconspicuous tiny gray font and the mere underlining of

3     hyperlinked terms and conditions was "insufficient to alert a reasonably prudent user that a

4     clickable link exists." *Id.* at 857.  It noted that "[c]ustomary design elements denoting the

5     existence of a hyperlink include the use of a contrasting font color (typically blue) ... which can

6     alert a user that the particular text differs from other plain text in that it provides a clickable

7     pathway to another webpage." *Id.*

8            In *Oberstein*, the Ninth Circuit affirmed an order compelling arbitration when a website

9     provided conspicuous notice "[a]t three independent stages." *Oberstein*, 60 F.4th at 515.  When

10    creating an account, signing into an account, and completing a purchase, users were presented

11    with a confirmation button above which text informed the user that, by clicking on the button,

12    "you agree to our Terms of Use."  60 F.4th at 515.  The "Terms of Use" hyperlink was "crucially"

13    conspicuously distinguished from the surrounding text in bright blue font, "making its presence

14    readily apparent." *Id.* at 516.

15           Other cases look to conspicuous appearance in determining notice.  In *Pizarro*, the court

16    found that the underlined hyperlink, which was the same color as the rest of the textual notice,

17    "when viewed in the context of the overall design and content of the webpage," was reasonably

18    conspicuous because the notice and hyperlink (1) appeared "directly below" the action button, (2)

19    were set off by "ample white spacing" and "primarily surrounded by text no larger than the notice

20    itself," and (3) the "general design of the website," was "relatively uncluttered and ha[d] a muted,

21    and essentially uniform, color scheme." *Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC,

22    2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022); *see also Dohrmann v. Intuit, Inc.*, 823 Fed.

23    App'x 482, 854 (9th Cir. 2020) (finding contract was formed where terms-of-use hyperlink was

24    "the only text on the webpage in italics" and "located directly below the sign-in button," and

25    where overall webpage design was "relatively uncluttered"); *Peter v. DoorDash, Inc.*, 445 F.

26    Supp. 3d 580, 586 (N.D. Cal. 2020) (contract was formed where terms-of-use hyperlink appeared

27    "directly below" the "sign-up button," its text "contrast[ed] clearly with the background" and was

28

United States District Court
Northern District of California

Case No.: 23-cv-05646-EJD
**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

16

"plainly readable," and overall webpage design was "uncluttered").

Finally, in *Moyer*, the court evaluated a similar "modified" clickwrap agreement. *Moyer*, 2023 WL 4771181, at *4. On the "Create an account" screen, a notice appeared directly beneath the orange "Create account" button that a user was required to click to create an account on Chegg's website. *Id.* at *5. The notice stated: "By clicking Create account you agree to the Terms of use and Privacy Policy." *Id.* The notice appeared in black writing against a white background with the phrase "Terms of use" in blue, hyperlinked text. *Id.* And very minimal text or imagery appeared on the same page. *Id.* Based on these facts, the court found that a reasonable user would be placed on constructive notice of Chegg's TOUs. *Id.*

Plaintiff contends that the 2015 Sign-Up Screen are more aligned with those identified in cases where courts found sign-up pages lacked reasonably conspicuous notice. Opp. 13 (citing *Massel v. SuccessfulMatch.com*, No. 23-CV-02389-PCP, 2024 WL 802194, at *5 (N.D. Cal. Feb. 27, 2024) (concluding hyperlinks not reasonably conspicuous where they "were underlined but did not appear in a contrasting color") and *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (finding notice insufficient where the relevant font was smaller than the "Sign Up" button, the notice language was in a "lighter font" that "blend[ed] into the white background more than the darker writing above it," and "the notice language [was] not immediately adjacent to the 'Sign Up' button, but rather separated by larger and darker text addressing users with existing accounts)). In so arguing, Plaintiff contends that the notice language here is not as conspicuous as it could be. The Court agrees. Coursera could have used underlining, blue coloring, all capital letters, or a larger font. But those features are not dispositive, and courts have enforced arbitration agreements where hyperlinks were conspicuous even without blue font or capitalization. *See, e.g.*, *Keebaugh*, 100 F.4th at 1020; *Pizarro*, 2022 WL 3357838, at *3.

Here, aspects of the 2015 Sign-Up Screen support a finding that the screen is reasonably conspicuous. On one hand, the hyperlinked terms are bolded, and as in *Oberstein* and *Keebaugh*, the notice is displayed directly below the action button. *See Oberstein*, 60 F.4th at 517 (terms

United States District Court
Northern District of California

1  sufficient to provide reasonably conspicuous notice where "notices were not buried on the bottom

2  of the webpage or placed outside the action box, but rather were located directly on top of or

3  below each action button"); *Keebaugh*, 100 F.4th at 1020 (same where notice was "[d]irectly

4  beneath the operative Play button").  And like *Pizarro* and *Keebaugh*, the hyperlink appears on a

5  screen that is simple and lacks clutter—making the hyperlink more readily apparent.  On the other

6  hand, the hyperlinks are not blue, underlined, or capitalized.

7      In reviewing the totality of the presentation, the Court finds that the darker and bolded text

8  of the hyperlinked "Terms of Service" adequately contrasts with the light gray background such

9  that a user would not "be required to hover their mouse over otherwise plain-looking text or

10  aimlessly click on words on a page in an effort to ferret out hyperlinks."  *Berman*, 30 F.4th at 857.

11  The bolded text "denot[es] the existence of a hyperlink."  *Id.*  The location of the link directly

12  below the "Sign Up" button also draws attention to the notice.  Unlike *Serrano* and *Sellers*, where

13  the notice language was not immediately adjacent to the action button, the hyperlinked TOU here

14  is directly below the "Sign Up" button.  And unlike *Sellers*, the font here is not "so small that the

15  contrast is not sufficient to make the [hyperlink] apparent."  *Sellers*, 73 Cal. App. 5th at 481.

16  When viewed "in the context of the overall design and content of the [2015 Sign-Up Screen],"—

17  which, as noted above, was simple and uncluttered, the notice here is reasonably conspicuous.

18  *Pizarro*, 2022 WL 3357838, at *3.

19      On balance and considering the full context of the hyperlink as presented, the 2015 Sign-

20  Up Screen satisfies the visual requirements to provide conspicuous notice that a reasonably

21  prudent internet user "would have seen" the hyperlink and would have been able to locate the

22  hyperlinked TOU.  *Oberstein*, 60 F.4th at 516.

23      **b.   Whether Plaintiff Unambiguously Manifested Assent to the
             Hyperlinked TOU in the 2015 Sign-Up Screen**

24      The second part of the analysis is whether Plaintiff took some action that unambiguously

25  manifested assent to the hyperlinked TOU in the 2015 Sign-Up Screen.  *Oberstein*, 60 F.4th at

26  517.  "A user's click of a button can be construed as an unambiguous manifestation of assent only

27

28  Case No.: 23-cv-05646-EJD
    ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."  *Berman*, 30 F.4th at 857.  "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."  *Id.* at 858.

Plaintiff argues that the text disclosing the TOU did not sufficiently advise Plaintiff that clicking "Sign Up" would bind him to those terms because the text of the notice states "*By creating an account*, I accept Coursera's Terms of Service and Honor Code."  Opp. 14 (emphasis added).  Plaintiff contends that this discrepancy between the "Sign Up" language and the "creating an account" instruction is insufficient to advise Plaintiff that clicking the former would bind Plaintiff to the terms of service.  *Id.* (citing *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 2314868, at *7 (N.D. Cal. Feb. 28, 2023) (finding no assent where "the notice inform[ed] users that they agree to the Terms of Use by clicking a 'Get Started' button, not the 'CHECK LISTINGS' button")).

Courts have found no assent where, considering the overall design of the page, there was a discrepancy between the action button and the text of the notice.  For instance, in *Berman*, the webpage simply presented a continue button with a statement below reading "I understand and agree to the Terms & Conditions," without reference to the impact of any particular action.  *Berman*, 30 F.4th at 858.  The Ninth Circuit therefore determined that the design of the web page in *Berman* did not "explicitly advise[ ] that the clicking will constitute assent to the terms and conditions of an agreement."  *See id.* at 857.  In *Williams*, a case Plaintiff relies on, the text disclosing the terms of use was "buried in lines sixteen and seventeen of twenty-one in a full-justified block paragraph."  *Williams*, 2023 WL 2314868, at *5.  The long paragraph began by stating "By clicking the 'Get Started' button, I am agreeing to," followed by a long list of items before reaching the sentence "In addition, I agree to the Terms of Use ...."  *Id.*  The long paragraph was followed not by a "Get Started" button, but by a "CHECK LISTINGS" button and past that, a "Get Started Today" button.  *Id.* at *6.  The court found that defendants had not met their burden to show unambiguous manifestation of consent because of the mismatched language between the

United States District Court
Northern District of California

"Get Started" button and the "CHECK LISTINGS" button and where defendants submitted no evidence showing the plaintiff actually clicked the latter button.  *Id.* at *7.

Conversely, courts have found unambiguous consent despite mismatched language where the disclosure of the notice was located immediately adjacent to the action button.  In *Regan v. Pinger, Inc.*, the court evaluated a disclosure alerting plaintiff that "By registering, I agree to Sideline's Terms and Conditions," located immediately above the "Create Account" button.  No. 20-CV-02221-LHK, 2021 WL 706465, at *8 (N.D. Cal. Feb. 23, 2021).  The court found the proximity of the disclosure to the action button provided "sufficient notice that Plaintiff would be bound by the [relevant] TOS when Plaintiff clicked the 'Create Account' button."  *Id.*  And the plaintiff in *Regan* "went through the full process of creating and using an account" multiple times and plaintiff was "presented with only one button."  *Id.*  In *Lee v. DoNotPay, Inc.*, the court evaluated a sign-up screen that contained mismatched language.  683 F. Supp. 3d 1062, 1074 (C.D. Cal. 2023).  Plaintiff in *Lee* argued that the mismatch in language between "Continue" and "By signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions" invalidated any assent to the terms.  *Id.*  The court found that the language mismatch "did not undermine assent" where the "Continue" button was located directly above reasonably conspicuous and explicit language that put users on notice that continuing would manifest assent to the terms and conditions.  *Id.*

Here, in contrast to *Berman* and *Williams*, the 2015 Sign-Up Screen makes the assent-manifesting action—creating an account—clear, and clicking the "Sign Up" button is the way to complete that action.  The Court finds that, despite the discrepancy in language, there can be no reasonable dispute that Plaintiff assented to the terms of service by clicking "Sign Up."  As in *Regan*, Plaintiff was "presented with only button," located directly adjacent to the notice containing the hyperlink to the TOU.  Plaintiff here does not dispute that he entered his name and email, created a password, and clicked "Sign Up" to create his account.  The "Sign Up" button is directly above the TOU hyperlink—making the "assent-manifesting action clear" and "put[ting] users on notice that continuing would manifest assent to [Coursera's] terms and conditions."  *Lee*,

Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

683 F. Supp. 3d at 1075.  In contrast to the webpage that contained the mismatched wording in *Williams*, which was long and cluttered, and where the action button was separated from the hyperlink to the TOS by several lines of text, the 2015 Sign-Up Screen here is short and straightforward, and the action button is directly above the hyperlink containing the terms of service.  *Williams*, 2023 WL 2314868, at *1–2.

Accordingly, the Court concludes that Plaintiff unambiguously assented to Coursera's terms of service as displayed in the 2015 Sign-Up Screen.

### 2.    Email and Banner Update Notices

The next step in Coursera's first theory pertains to email and banner updates it sent to users notifying them of updates to Coursera's TOU.  Coursera notified Plaintiff of updates to its terms of service via email and through banners on its homepage three times between 2020 and 2023.  Mot. 5–7.  Coursera contends that Plaintiff's continued use of Coursera's services after it sent and posted these notices demonstrates Plaintiff's assent to the updated TOU—which included the Arbitration Agreement.  *Id.* at 14–16.

"Under California law and generally applicable principles of contract law, the burden is on [Coursera] as the party seeking arbitration to show that it provided notice of a new TOS and that there was mutual assent to the contractual agreement to arbitrate."  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).

In conjunction with the 2021 TOU update, Coursera emailed all users to inform them of forthcoming updates to its TOU, including updates to the Arbitration Agreement, effective January 1, 2021 (the "2021 Notice Email").  Furniturewala Decl. ¶ 12.  Coursera's records show that the 2021 Notice Email, bearing the subject line, "Terms of Use and Privacy Notice Update," was delivered to Plaintiff's email address on December 18, 2020.  *Id.* ¶ 13.  The 2021 Notice Email advised Plaintiff of the following:

> *As part of our ongoing efforts to provide the best service to learners, customers, and partners, we will be updating some of our policies. Effective January 1, 2021, an updated Terms of Use and Privacy Notice will be in place on Coursera.*

*Id.*, Ex. E.

The 2021 Notice Email stated that changes to Coursera's terms included updated arbitration language:

> For your convenience, here is a brief summary of the changes to each policy. We encourage you to review each one in full.
>
> • *Terms of Use*: Updated arbitration language and increased clarity of definitions.

*Id.* The blue-font "Terms of Use" language was a hyperlink to the full version of the 2021 TOU containing the Arbitration Agreement. *Id.* ¶ 13.

Plaintiff argues that the email and banner notices fail both prongs of the *Berman* test. "[I]n order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). In *Stover*, the Ninth Circuit did not hold plaintiff to the updated terms where the record "d[id] not indicate whether [plaintiff] had notice of the changed terms when she visited [defendant's] website in 2018, nor d[id] [plaintiff's] complaint include any allegations related to notice." *Id.*

*Jackson* similarly found that Amazon failed to meet its burden to show that plaintiff received notice of updated terms where Amazon provided a declaration with a "vague" statement "that [Amazon] sent an email notifying drivers of a new TOS, such that [plaintiff] assented by continuing to perform deliveries." *Jackson*, 65 F.4th at 1099 (finding evidence insufficient to establish email sent provided notice where district court "did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice").

The Court will separately evaluate the 2021 Notice Email and the banner notices.

2021 Notice Email. Coursera produced a declaration from its Senior Vice President for Engineering who testified that Coursera's records show that an email with the subject line "Terms of Use and Privacy Notice Update" was delivered to Plaintiff's email address on December 18, 2020. Furniturewala Decl. ¶ 13. The declaration includes an image of the notice email, shown

Case No.: 23-cv-05646-EJD
**ORDER GRANTING MOTION TO COMPEL ARBITRATION**
22

1    below, which included a hyperlink in blue to the updated TOU.  *Id.*  As described above, the email

2    included "a brief summary of the changes to each policy." *Id.*  The brief summary following the

3    link to the updated TOS stated: "Updated arbitration language and increased clarity of

4    definitions." *Id.*

19   *Id.*, Ex. E.

20        The record indicates that Coursera sent Plaintiff the updated terms via email on December

21   18, 2020.  Thus, the Court finds that Coursera has established that Plaintiff was on inquiry notice

22   of the changed terms such that they are binding on Plaintiff.  Additionally, the email notice

23   satisfies both prongs of the *Berman* test.  Regarding the first prong, the language in the email is

24   reasonably conspicuous because the header clearly states that the email included updates to the

25   TOU, the TOU hyperlink is in blue font and stands out from the remaining text, and the hyperlink

26   is followed by a description of the TOU which specifically calls out "[u]pdated arbitration

27   language."  *See Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245, at *12

United States District Court
Northern District of California

1    (N.D. Cal. July 31, 2023) (emails with updates gave plaintiff reasonably conspicuous notice of the

2    agreement where subject line notified users of the update, the header repeated the language

3    regarding updates, the email contained "clear" hyperlink to agreement, and email "call[ed] out"

4    "express update to the arbitration agreement").  As in *Sadlock*, "[t]his is not a situation where the

5    reference to the arbitration agreement was buried and difficult to discern."  *Id.*

6            While arguing that Coursera has not demonstrated that Plaintiff received the email,

7    Plaintiff does not contend that he did not receive the email, either.  Opp. 16.  Plaintiff suggests that

8    given the high number of emails received daily, it is more likely that Plaintiff did not receive or

9    review the email.  Opp. 16.  The Court is sympathetic to that position, but Coursera has supplied

10   evidence that it sent the notice email to Plaintiff's email address (*see* Furniturewala Decl. ¶ 6, n.1

11   ("Plaintiff's counsel provided Coursera with Plaintiff's email address, and a Coursera engineer

12   used a Coursera engineer used that information to identify Plaintiff's account")), and Plaintiff has

13   not submitted any counter evidence that he did not receive the email updates.  On the record

14   before it, the Court finds that Coursera met its burden to show that Plaintiff received notice of the

15   updated terms.

16           Regarding the second prong of the *Berman* test, Plaintiff argues that even if Plaintiff did

17   receive and open the emails, Coursera cannot establish unambiguous assent because the email

18   updates did not include a continuing use provision.  Opp. 16.  Plaintiff contends that courts only

19   find assent by "continuing use" where the website contains "an explicit textual notice" that

20   continued use will act as a manifestation of the user's intent to be bound.  *Id.* (citing *Nguyen v.*

21   *Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014))[3].

22

23   _____

24   [3] Plaintiff's comparison to *Sifuentes* is unavailing.  Plaintiff argues that *Sifuentes* stands for the
     proposition that email notices of updates to terms of use are insufficient for formation of a contract
     where a party "took no action to unambiguously manifest his assent."  Opp. 17 (citing *Sifuentes v.*
25   *Dropbox, Inc.*, No. 20-CV-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022),
     appeal dismissed, No. 22-16367, 2023 WL 2455684 (9th Cir. Jan. 20, 2023)).  But the court there
26   determined that plaintiff's "ongoing use of the service [was] irrelevant to determining whether he
     had actual or constructive notice of the post-2011 terms of service" given "the complete lack of
27   evidence of notice."  *Id.*  Such is not the case here, where Coursera has provided evidence of the
     email notice to Plaintiff.

28   Case No.: 23-cv-05646-EJD
     ORDER GRANTING MOTION TO COMPEL ARBITRATION
                                        24

United States District Court
Northern District of California

1      In *Matera v. Google Inc.*, the plaintiff argued that it never consented to Google's privacy

2  policy contained in updated terms of service that was posted to Google's website.  No. 15-CV-

3  04062-LHK, 2016 WL 5339806, at *16 (N.D. Cal. Sept. 23, 2016).  When signing up for Gmail,

4  users agreed to the terms of service which included a statement that "[b]y using our Services, you

5  are agreeing to these terms....If you do not agree to the modified terms for a Service, you should

6  discontinue your use of that Service." *Id.* at *2.  The court found that plaintiff agreed to and was

7  bound by the privacy policy at the time the updated terms were posted to Google's website. *Id.* at

8  *17.

9      In *In re Facebook Biometric Info. Priv. Litig.*, the court considered whether plaintiffs could

10  be bound to an updated user agreement following their initial assent to the original user agreement

11  presented at the time they signed up for Facebook.  185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

12  The plaintiffs were "provided notice that the terms of the user agreement were changing through

13  an email from Facebook sent directly to the email addresses each plaintiff had on file with

14  Facebook." *Id.*  Each plaintiff also "received a 'jewel notification'" on their individual Facebook

15  newsfeed. *Id.*  The court found that this "individualized notice" regarding updated terms "in

16  combination with [the plaintiffs'] continued use" was "enough for notice and assent." *Id.*

17      Here, Plaintiff's consent to the 2015 TOU, which contained a "continuing use" provision,

18  combined with Plaintiff's continued use of Coursera's services, is sufficient to demonstrate

19  manifestation of consent to the updated terms sent directly to the email address Plaintiff had on

20  file with Coursera. *See Sadlock*, 2023 WL 4869245, at *13 (plaintiff "unambiguously manifested

21  assent to the terms of the agreement by continuing to use the streaming service after he received []

22  emails" with updated terms); *see also In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d

23  at 1167 (binding plaintiffs to updated terms of agreement where they "initially accepted the user

24  agreement that was then in force when each plaintiff created [their] account" and "[s]ubsequently,

25  plaintiffs were given adequate notice of the terms in the [updated] user agreement, and the

26  plaintiffs accepted and agreed to the current terms by continuing to use Facebook after receiving

27  that notice").

28  Case No.: 23-cv-05646-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

Banner notices.  Plaintiff argues that the banner notices also fail both elements of the *Berman* test for being insufficiently prominent and not requiring manifestation of assent or referencing continued use as assent.  The 2021 banner notice ("2021 Banner Notice") states: "*Starting January 1, 2021, our updated Terms of Use and Privacy Notice are in effect. Please visit each respective page to find out more about the updates.*"  Mot. 5.  Below is an image of the 2022 Banner Notice, which Coursera states is "similar" to the 2021 Banner Notice:



Furniturewala Decl. ¶ 16, Ex. H.

Without an image of what the 2021 Banner Notice looks like, the Court is not able conclude whether it provided sufficiently conspicuous notice, and Coursera has not met its burden as to that notice.  But even the 2022 Banner Notice does not appear sufficiently conspicuous to satisfy the first *Berman* prong.  The banner is shown in a light blue box near the top of the webpage that blends in somewhat to the background of the webpage, and the font appears smaller than the surrounding font.  Additionally, the hyperlinked terms, although blue, appear within the banner which itself appears among a fairly cluttered webpage.  When "viewed in the context of the overall design and content of the webpage," the Court cannot conclude that the 2022 Banner provides reasonably conspicuous notice of the hyperlinks to the updated TOU.  *Pizarro*, 2022 WL 3357838, at *3.

United States District Court
Northern District of California

1          Nevertheless, Coursera does not rely on the banners alone to establish notice of the

2   updated terms of use.  As explained above, the 2015 Sign-Up Screen and the 2021 Notice Email

3   were sufficient to establish notice and assent of the 2021 TOU containing the Arbitration

4   Agreement.

5                **3.        2022 Course Registration**

6          Even if the Court concludes that Plaintiff did not assent to the Arbitration Agreement in the

7   2021 TOU by way of the 2015 Sign-Up Screen and subsequent updates, Coursera argues that the

8   Court can still compel arbitration based on Plaintiff's assent to the same Arbitration Agreement

9   when he enrolled in a certification course in 2022.  In enrolling for the course, Plaintiff completed

10  a "checkout flow"—the 2022 Checkout Flow—that required him to fill out his credit card

11  information.  *See* Mot. 8.  As shown below, beneath the "Pay Now" button was the statement "I

12  agree to the Terms of Use, Refund Policy, and Privacy Policy.  I also certify that I am not

13  currently enrolled in the Master of Machine Learning for Analytics."  *Id.*

1    Furniturewala Decl. ¶ 17, Ex. J.

2         Plaintiff again argues that the 2022 Checkout Flow cannot bind him because the manner

3    the terms were presented fails both prongs of the *Berman* test.  Opp. 19.  Plaintiff complains that

4    the hyperlinked text is again too small, the user's eye is drawn away from the hyperlinked terms

5    because of the larger, blue "Pay Now" button, and the text on the payment screen does not

6    mention arbitration.  *Id.*  Plaintiff also argues that the 2022 Checkout Flow cannot show

7    unambiguous manifestation of consent and thus satisfy the second prong of *Berman* because the

8    action button states "Pay Now," but the terms underneath state "I agree to the Terms &

9    Conditions…"  *Id.* at 20.

10        As to the first prong, the Court finds that the 2022 Checkout Flow satisfies the visual

11   requirements to provide conspicuous notice that a reasonably prudent internet user "would have

12   seen" the hyperlink and be able to locate the TOU.  *Oberstein*, 60 F.4th at 516.  The TOU

13   hyperlinks are blue, underlined, and located directly below the "Pay Now" button.  And for similar

14   reasons explained above, the context of the transaction—Plaintiff purchasing a certification with

15   several multi-hour modules—supports a finding that Plaintiff should have expected the transaction

16   would be governed by terms of use.  *See Keebaugh*, 100 F.4th at 1020.

17        As to the second prong, the Court is less convinced that Coursera could rely on the

18   2022 Checkout Flow standing alone to establish unambiguous consent.  Unlike the 2015 Sign-Up

19   Screen, which specifically noted that by taking some action (creating an account), the user would

20   accept Coursera's terms of service, the 2022 Checkout Flow as presented to the Court lacks any

21   similar advisement.  Plaintiff's click of the "Pay Now" button can be construed as unambiguous

22   manifestation of assent "only if [Plaintiff] is explicitly advised that the act of clicking will

23   constitute assent to the terms and conditions of an agreement."  *Berman*, 30 F.4th at 857, 858

24   ("[T]he notice must explicitly notify a user of the legal significance of the action she must take to

25   enter into a contractual agreement").  Although courts have found unambiguous manifestations of

26   consent even where the language between the button and the notice is not an exact match (*e.g.*,

27   *Lee*, 683 F. Supp. 3d at 1074), Coursera has not identified similar outcomes by courts where the

28   Case No.: 23-cv-05646-EJD

notice lacked an advisement that by clicking the button, or taking some action, the user was

consenting to the terms.  This lack of advisement makes the 2022 Checkout Flow more like the

notice *Berman* found did not constitute assent, where the webpage simply presented a continue

button with a statement below reading "I understand and agree to the Terms & Conditions,"

without reference to the impact of any particular action.  *Berman*, 30 F.4th at 858.  Although

close, without an advisement stating that taking some action (here, clicking "Pay Now")

constituted consent to the terms of use, Coursera has not established Plaintiff's unambiguous

manifestation of assent to the TOU in the 2022 Checkout Flow.  The Court acknowledges that

Plaintiff was a continued user of Coursera's services, and given this context of the transaction, he

would likely have expected to be governed by some terms of service.  But the Court cannot find

that Coursera has met its burden to establish Plaintiff's unambiguous assent to the terms of service

as presented in the 2022 Checkout Flow standing alone.

\* \* \*

In sum, although Coursera has not established that Plaintiff manifested assent when he

completed the 2022 Checkout Flow, Coursera has met its burden to show that Plaintiff did

manifest assent to the 2015 TOU when he signed up using the 2015 Sign-Up Screen.  The

2015 TOU contained a "continuing use" provision, and Coursera provided reasonably conspicuous

notice of the 2021 TOU containing the Arbitration Agreement at least in the 2021 Notice Email.

For the above reasons, Coursera has met its burden to establish contract formation.  Other

than arguing that no agreement was formed, Plaintiff does not contest the enforceability of the

arbitration clause.  Nor does Plaintiff contest that the claims in this case fall within the scope of

that clause.

### D.     Whether Discovery Is Permitted

Plaintiff requests an opportunity to seek limited discovery into issues related to contract

formation.  Opp. 21.  Specifically, Plaintiff identifies the following discovery it wishes to seek:

"(1) the complete website flow and the full webpages in which the screenshots of Coursera's sign-

up page, (dkt. 38-2) and payment page (dkt. 38-11) are embedded, instead of just one-off partial

1  screenshots; (2) confirmation that the screenshots presented reflect the actual screens that Plaintiff

2  would have been presented with—e.g., depending on whether he signed up or made purchases on

3  his phone or on a desktop; (3) the records that reflect whether any email notices regarding

4  Coursera's TOU changes were received or opened by Plaintiff; and (4) information about how

5  Coursera's email notices (dkt. 38-6) would actually appear in a user's inbox." *Id.*

6      Coursera argues that Plaintiff's requested discovery would provide no new information

7  useful to the Court in analyzing formation.  Reply 15.  The Court agrees that the requested

8  discovery would not be useful to the Court.

9  **IV.    CONCLUSION**

10      Accordingly, the Court GRANTS Coursera's motion to compel arbitration.  The entire

11  case will be STAYED and administratively closed.  The parties shall notify the Court within

12  10 days of reaching a final resolution in the pending arbitration.  The Court sets a status

13  conference for October 24, 2024.  The parties shall file a joint status conference statement no later

14  than October 11, 2024, informing the Court as to the status of the pending arbitration.

15

16      **IT IS SO ORDERED.**

17

18  Dated: June 20, 2024

19

20  _____

21  EDWARD J. DAVILA
   United States District Judge

22

23

24

25

26

27

28  Case No.: 23-cv-05646-EJD
   ORDER GRANTING MOTION TO COMPEL ARBITRATION
   30

United States District Court
Northern District of California